# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2668

_____

United States of America,

     Plaintiff-Appellee,

v.

Andre Quinn Duke,

     Defendant-Appellant.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the District
\*   of Minnesota.
\*
\*
\*

_____

Submitted: May 15, 2001
Filed: June 29, 2001

_____

Before LOKEN, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Andre Duke was convicted of arson in violation of 18 U.S.C. §§ 2 and 844(i), and of conspiracy to commit arson, in violation of 18 U.S.C. § 371. He appeals his conviction and the denial by the district court[1] of his motion for a new trial based on newly discovered evidence. We affirm.

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

Andre Duke owned a bar in St. Paul, Minnesota named "Rocky's on 10th," and his brother Claude Duke managed the daily business. Rocky's was seriously damaged by a fire and explosion on May 24, 1993. A subsequent investigation revealed that the fire was a result of arson and that the arsonist had poured gasoline around inside the bar and then ignited it with open flame. The investigation also suggested that the fire had been set by someone with access to a door key and that the arsonist had tampered with the entrances to suggest a forced entry.

The Duke brothers were indicted by a federal grand jury in July 1999, on two counts of arson and conspiracy to commit arson. The government theory at trial was that Rocky's had been in dire financial straits and that the Dukes had committed arson in order to escape their losses and to collect insurance. The jury heard evidence that the brothers were months behind in payments to their suppliers and landlord and were in danger of eviction. Witnesses testified that the brothers had recently made unsuccessful efforts to sell Rocky's and that they had both expressed dissatisfaction with the business. The evidence also indicated that both Dukes had falsely stated to law enforcement and insurance investigators that business was good and that they were current on all their debts. The Dukes denied any involvement in the fire and attempted to implicate others, including former employees, competing bar owners, and gang members. Andre Duke testified that Rocky's was financially stable and that he had no motive to commit the arson. Claude Duke exercised his Fifth Amendment rights and did not testify at trial.

When alternate juror Catherine Larson became aware during trial that someone with whom she worked was a government witness, she informed the court. The witness she knew was Art McGrane, a former bartender at Rocky's, whom the defense suggested was the most likely arsonist. Larson expressed a concern to the court that McGrane might be embarrassed to learn that she was a juror and asked what she should do if other jurors were to question her about McGrane. The court told Larson that McGrane already knew who the jurors were, that embarrassment was not an issue,

and that she was not to share any information or opinion about McGrane with the other jurors.  The court informed counsel about the conversation, and Larson and the other alternate juror were discharged from jury service before deliberations began.

The jury convicted Andre Duke on both counts and Claude Duke of conspiracy to commit arson.  Both moved for a judgment of acquittal.  The district court denied the motion of Andre Duke, but it granted that of Claude Duke on the basis that there was insufficient evidence to support his guilty verdict.  The government did not appeal from Claude Duke's judgment of acquittal.

On March 28, 2000, after the time had passed when the government could appeal Claude Duke's acquittal, the district court received a letter from him stating that he had set the fire at Rocky's.  He said he had been depressed because the bar was not doing well and because he had not told Andre the truth about its precarious financial situation.  He stated that he went to Rocky's on the evening of the fire to commit suicide, but "[t]he more I drank the angrier and depressed I got, somehow I thought if I started a small fire in the bar it would sove my problems [sic]."  He claimed that he had doused the area with gasoline, tampered with the door to make it appear that there had been a forced entry, and set the fire himself:

> I did this all on my own, my brother Andre knew nothing about what I did.  I quite honestly never thought that a jury would find him guilty since he was at home with his girlfriend so how could someone think he did it.  I feel bad that my brother and my family have had to go through all of this.

Andre Duke then moved for a new trial under Rule 33 of the Federal Rules of Criminal Procedure, arguing that his brother's letter was newly discovered evidence.  He also submitted the transcript of a taped April 2000 conversation in which Claude repeated that he was solely responsible  for the fire and that Andre had not been

involved in the fire in any way. After a hearing, the district court denied the motion. The court found that Claude's letter and transcribed taped statement were "simply not credible" and rejected them in their entirety. The court concluded that Claude's exculpatory statements did not constitute newly discovered evidence, but that there was no likelihood that they would produce an acquittal in any event. The motion for a new trial for Andre Duke was denied.

Duke appeals and argues that the district court erred in denying his motion for a new trial and that he was denied a fair trial by the district court's ex parte communication with alternate juror Larson at trial. The United States responds that the district court did not abuse its discretion in denying the Rule 33 motion or in its communication with Larson at trial.

The denial of a motion for a new trial based on newly discovered evidence will not be reversed absent a clear abuse of discretion. See United States v. Castillo, 171 F.3d 1163, 1167 (8th Cir. 1999) (citations omitted). To justify a new trial on this ground, (1) the evidence must have been discovered after trial; (2) the failure to discover this evidence must not be attributable to a lack of due diligence on the part of the movant; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be likely to produce an acquittal if a new trial is granted. See United States v. Ryan, 153 F.3d 708, 713 (8th Cir. 1998) (citations omitted).

The district court denied Andre Duke's new trial motion on the grounds that Claude Duke's statement did not constitute "newly discovered evidence" and that even if it did, "there is no likelihood that the statement . . . would result in acquittal of Andre Duke." After carefully examining the record, we agree with the district court's conclusions. Both the timing and the nature of the statements render them of dubious credibility. For nearly seven years, Claude Duke had steadfastly denied that Rocky's was suffering financial difficulties or that he had been involved in any way in the crime.

He did not take responsibility for the fire until after the time had passed for the government to appeal his acquittal. The district court did not err in finding that Claude's statements attempting to exonerate his brother were not credible, coming as they did after he had been acquitted and had relatively little to lose by accepting full responsibility for the fire, and that they were therefore not newly discovered evidence.

Duke also did not establish that his brother's recantation would probably have resulted in acquittal on retrial. "Confessions given only after the confessor's conviction, and especially when proffered by relatives or friends, are engulfed in an 'aura of suspicion and doubt.'" United States v. Kamel, 965 F.2d 484, 494 (7th Cir. 1992) (citations omitted). Such statements are of limited probative value and are unlikely to lead to an acquittal. In this case, a second jury would likely view Claude's statements "as nothing more than brotherly loyalty, with [Claude] taking full blame for a crime which he, as well as his brother, has already been convicted." Id. at 494-95. A jury's suspicions would also be aroused by the fact that Claude did not confess until the government's time to appeal his acquittal had elapsed and he was no longer subject to a second prosecution. Furthermore, there was much evidence tying Andre Duke to the crime. In short, the trial court did not abuse its discretion in finding that Claude's testimony was not credible and that his statement was unlikely to produce an acquittal in the event of a new trial.

Andre Duke next contends that the colloquy between the district court and alternate juror Larson "may have been an impermissible ex parte communication which prejudiced Appellant's right to a fair trial." A trial court has leeway in its trial management "to question a juror whose qualifications have been called into doubt . . . in order to resolve such matters as they arise and ensure an impartial and competent jury." United States v. Campell, 845 F.2d 782, 785 (8th Cir. 1988). "[R]ulings on the qualifications of jurors will not be disturbed 'absent a clear showing of abuse of the sound discretion vested in the district court.'" Id. (citations omitted). Moreover, it cannot be said that Duke was prejudiced by the conversation. Nothing inappropriate

has been shown about the court's meeting with Larson, and it appears Andre Duke did not make an issue of it at trial. Furthermore, Larson was dismissed before deliberations began. The court's conversation with the alternate juror did not prejudice Andre Duke's right to a fair trial.

For the reasons stated above, we affirm the judgment of the district court and the order denying a new trial.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.