NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0358n.06

No. 09-6473

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*May 25, 2011*

LEONARD GREEN, Clerk

ROB CAUDILL,                                )
                                            )
        Plaintiff-Appellant,                )           ON APPEAL FROM THE
                                            )           UNITED STATES DISTRICT
        v.                                  )           COURT FOR THE EASTERN
                                            )           DISTRICT OF KENTUCKY
COMMISSIONER OF SOCIAL SECURITY,            )
                                            )
        Defendant-Appellee.                 )
                                            )

BEFORE: MERRITT, ROGERS, and WHITE, Circuit Judges.

        ROGERS, Circuit Judge. Plaintiff Robert Caudill appeals the November 25, 2008

decision of an administrative law judge (ALJ) denying him social security disability insurance

benefits (SSI), and the district court's decision to uphold the ALJ's decision. On appeal, Caudill

argues that the ALJ erred in not finding him to be illiterate, and thus disabled, and in not classifying

him as a person of advanced age given his borderline-age status. Because the ALJ's decision

contains no legal error and is otherwise supported by substantial evidence, the Commissioner's

decision was properly upheld by the district court.

        Robert Caudill, born on January 26, 1954, is a former coal-mine employee living in

Kentucky. Caudill first applied for SSI in 1999. That claim was denied by the Social Security

Administration initially, upon reconsideration, and by decision of ALJ Burt R. Francis Jr. dated

August 28, 2001. ALJ Francis made an extensive evaluation of the evidence and concluded that,

although Caudill suffered from a variety of physical ailments and cognitive limitations, he was still

capable of working, and a significant number of suitable jobs existed in the national economy. The Appeals Council denied Caudill's request for review of ALJ Francis's decision, making the decision final.[1] This decision was affirmed by the district court in 2002.

Caudill filed a new application for SSI on December 18, 2002. That application was denied initially, upon reconsideration, and by decision of ALJ Richard C. Bentley dated March 17, 2005. The Appeals Council denied Caudill's request for review of ALJ Bentley's decision, making the decision final.[2] The case was remanded by the district court for further proceedings on April 24, 2006, due to the loss of Caudill's December 2004 hearing tape. The Appeals Council vacated the administrative decision and remanded the case for a new ALJ hearing. Prior to that remand, Caudill filed a third application for SSI on March 31, 2005. That application was also denied initially and on reconsideration.

On April 24, 2007, ALJ Bentley issued an opinion consolidating the 2002 and 2005 applications and denying them. Caudill appealed this decision to the district court,[3] which remanded

---

[1]Although no record of the Appeals Council's denial of Caudill's request for review is available, ALJ Richard C. Bentley discusses this in his April 24, 2007 decision.

[2]Although no record of the Appeals Council's denial of Caudill's request for review is available, Caudill discusses this in his Complaint.

[3]The record provides no indication of what action, if any, the Appeals Council took with respect to ALJ Bentley's April 24, 2007 decision, or of whether Caudill even sought review with the Appeals Council before seeking review in the district court. The social security regulations provide that "when a case is remanded by a Federal court for further consideration, the decision of the administrative law judge will become the final decision of the Commissioner after remand on your case unless the Appeals Council assumes jurisdiction of the case," 20 C.F.R. § 416.1484(a), that the Appeals Council may assume jurisdiction of the case if the claimant files written exceptions to the ALJ's decision, or on the Council's own motion, *id.* § 416.1484(c), and that "[i]f no exceptions are filed and the Appeals Council does not assume jurisdiction of your case, the decision of the

the case for consideration of two issues: (1) the correct period of disability, and (2) Caudill's objection to inclusion of a report by a physician who was not licensed at the time of Caudill's examination. The Appeals Council vacated the administrative decision and remanded for a new ALJ hearing. On October 8, 2008, ALJ Roger L. Reynolds held a hearing on Caudill's claims. ALJ Reynolds issued a decision on November 25, 2008, finding that Caudill was not disabled within the meaning of the Social Security Act and denying him SSI. The Appeals Council took no action with respect to ALJ Reynolds's decision,[4] thus making that decision final. Caudill sought review in the district court on January 22, 2009.

At the time of the October 8, 2008 hearing, Caudill was fifty-four years old, and was less than four months away from turning fifty-five. He was two months away from turning fifty-five when ALJ Reynolds issued his November 25, 2008 decision. Caudill attended school through eleventh grade. He attended some classes in twelfth grade, but did not graduate from high school. He attended regular (as opposed to special education) classes during the course of his education. There is some evidence that he was required to repeat the third and fourth grades. A psychological evaluation conducted in 2000 determined that Caudill reads at a second-grade level. He has been diagnosed with developmental reading disorder. Caudill testified that he has difficulty reading and writing. He testified that when he tries to read a newspaper, he is unable to understand "a whole lot"

---

administrative law judge becomes the final decision of the Commission after remand," *id.* § 416.1484(d). In any event, nether party claims that ALJ Bentley's April 24, 2007 was not final for purposes of district-court review.

[4]Although no record is available showing that the Appeals Council took no action with respect to ALJ Reynolds's decision, Caudill discusses this in his motion for summary judgment.

of it, and that somebody usually helps him when he is paying bills. However, ALJ Reynolds noted

that Caudill had previously stated that he could read and write a grocery list.

The district court's opinion summarizes relevant information in this case:

[Caudill] has approximately eighteen years of experience working in coal mines as a roof bolter. [Tr., p. 534-36] His alleged disability stems from diabetes and pain in his back, shoulder, and legs. [Tr., p. 124] After reviewing the record and the testimony presented at the hearing, the ALJ concluded that Caudill suffered from the severe impairments of degenerative disc disease at L3/4 and L4/5 with small herniated nucleus pulposus at L5/S1; insulin dependent diabetes mellitus; rule-out cardiomegaly; adjustment disorder with depressed mood; borderline intellectual functioning, estimated; developmental reading disorder; alcohol abuse/dependence, allegedly in remission; and hypothyroidism. [Tr., p. 487] Notwithstanding these impairments, the ALJ found that Caudill retained the residual functional capacity ("RFC") to perform light work

> with lifting and carrying only from tabletop or countertop level of approximately 20 pounds occasionally and 10 pounds frequently; standing a total of approximately 6-8 hours in an 8-hour workday and approximately 1 hour without interruption; sitting a total of approximately 6-8 hours and approximately 1 hour without interruption; requires a sit/stand option at one-hour intervals; can occasionally climb stairs with handrails, ladders, scaffolds or stepstools; occasionally balance, stoop, crouch, kneel and crawl. There must be no constant, uninterrupted use of upper extremities for 8 hours of an 8-hour workday for purposes of reaching, handling, feeling and pushing/pulling; must avoid unprotected heights, moving machinery, temperature extremes, chemicals, dust, fumes, excessive humidity and all other usual pulmonary irritants.

[Tr., p. 489-90] The ALJ further found that Caudill has

> a fair ability to follow work rules, relate to coworkers, deal with the public, use judgment, interact with supervisors, deal with work stresses, function independently, and maintain attention/concentration. He has poor ability to understand, remember and carry out complex job instructions. He has fair ability to understand, remember and carry out detailed but not complex job instructions. He has good ability to understand, remember and carry out simple job instructions. He has fair ability to maintain personal

4

> appearance, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability.
>
> [Tr., p. 490] This RFC is identical to the RFC in the August 28, 2001 hearing decision. [Id., n.1] As a result of ALJ Reynolds's assessment, Caudill was denied SSI. [Tr., p. 494]

*Caudill v. Astrue*, No. 7:06-028-DCR, 2009 WL 3270491, at *1-2 (E.D. Ky. Oct. 9, 2009).

On October 9, 2009, the district court granted the Commissioner of Social Security's motion for summary judgment, denied Caudill's cross-motion for summary judgment, and dismissed Caudill's SSI claim. Caudill timely appealed to this court. Caudill raises only two issues on appeal: (1) whether the ALJ should have found Caudill to be "illiterate" as defined in 20 C.F.R. § 416.964(b)(1), and thus disabled; and (2) whether the ALJ properly found Caudill to be an individual "closely approaching advanced age," rather than a person of "advanced age," given Caudill's borderline age status.

## I.      The ALJ properly found Caudill to have a "limited education" and that Caudill was not "illiterate."

Substantial evidence supports the ALJ's determination that Caudill had a "limited education" and was not "illiterate." Grid Rule 202.09 (included in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 2) provides that an individual who is "closely approaching advanced age"—that is, age fifty to fifty-four—is disabled if she is "illiterate or unable to communicate in English." Caudill was fifty-four at the time of ALJ Reynolds's hearing and decision, and thus was "closely approaching advanced age." In his decision denying Caudill SSI, ALJ Reynolds found that "[t]he claimant has a limited education and is able to communicate in English (20 CFR 416.964)." 2008

SSI Decision at 9. Pursuant to Grid Rules 202.10 and 202.11, this compelled a determination that Caudill was not disabled.

Caudill argues that ALJ Reynolds improperly adopted ALJ Francis's previous finding that Caudill has "a limited education," pursuant to the res judicata rule of *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997). However, it is not entirely clear whether the ALJ reached this finding independently, based on his own analysis of Caudill's evidence, or by simply adopting ALJ Francis's finding under *Drummond*. The ALJ noted that *Drummond*

> requires that consideration be given to the prior Administrative Law Judge decision which contains a finding of a claimant's residual functional capacity. The Drummond decision requires the undersigned as the adjudicator of this subsequent claim to adopt and be bound by the finding of a claimant's residual functional capacity or other findings required at a step in the sequential evaluation process. The undersigned cannot reexamine or redetermine the finding of a claimant's residual functional capacity or other issues previously determined in the absence of new and additional material evidence or changed circumstances.

2008 SSI Decision at 3-4. The ALJ also stated that he "adopts the residual functional capacity as set forth in the previous final decision as there is no medical evidence of record in contravention of this finding. The undersigned finds no basis for reopening the prior decision in that the conditions for reopening are not met." *Id.* at 4. The residual functional capacity assessment, though, is not at issue in this appeal; the finding of "limited education" versus "illiteracy" is. The ALJ gave no indication that he adopted this particular finding from ALJ Francis's decision pursuant to *Drummond*. Also, the ALJ cited record evidence that would support a finding of "limited education" as opposed to "illiteracy" independent of the *Drummond* rule: Caudill admitted being able to read

6

and write a grocery list; Caudill successfully worked for many years; Dr. Stuart Cook opined that Caudill has at least a fair ability to understand, retain, and follow instructions; and Caudill's educational level.

However the ALJ's "limited education" finding is viewed, whether as an application of *Drummond* or as an independent finding, the finding must be upheld. If ALJ Reynolds adopted ALJ Francis's prior finding that Caudill has a "limited education" and is not "illiterate" pursuant to *Drummond*, this was proper because the *Drummond* principle could properly be relied upon in the instant case. In *Drummond*, the claimant's initial claim for SSI was denied when the ALJ found that Drummond retained a residual functional capacity for sedentary work. *Drummond*, 126 F.3d at 838. When Drummond later re-filed her disability claim, a second ALJ found that Drummond retained a residual functional capacity suitable for medium-level work, unlike the sedentary residual-functional-capacity finding of the first ALJ, and denied the re-filed claim. *Id.* at 839. After explaining that "[r]es judicata applies in an administrative law context following a trial type hearing," *id.* at 841, this court held that the second ALJ was bound to the sedentary residual-functional-capacity determination of the first ALJ because there was no new or additional evidence of an improvement in Drummond's condition, *id.* at 842. "Just as a social security claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner." *Id.*

Caudill argues that a *Drummond*-style bar on relitigation cannot apply because the earlier determination did not depend on illiteracy, but the same argument could have been made in *Drummond* itself. The issue in *Drummond* was the residual-functional-capacity determination. A medium-level-work residual-functional-capacity determination would not have changed the outcome

of the first ALJ hearing in *Drummond*, because both sedentary and medium residual functional capacities would have resulted in a "not disabled" finding due to Drummond's age category at the time of her first hearing. These circumstances in *Drummond* are the same in the present case, except that the issue here is not Caudill's residual functional capacity, but his literacy/educational level. In 2001, ALJ Francis found Caudill to have a "limited education" and to not be "illiterate." In 2008, ALJ Reynolds did the same. Due to Caudill's age classification at the time of the 2001 hearing, even if Caudill had been found "illiterate," he would still have been found "not disabled." Hence, both Caudill and Drummond lacked the incentive to litigate the issue that later became dispositive—literacy in Caudill and residual functional capacity in *Drummond*. In both cases, the resolution of these issues was not material to the outcome of their first hearings. And just as in *Drummond*, Caudill introduced no new or additional evidence with respect to "illiteracy" versus "limited education." The *Drummond* res judicata rule thus applied just as readily to Caudill's case as it did to Drummond's, and supported ALJ Reynolds' adoption of ALJ Francis's finding that Caudill had a "limited education" and was not "illiterate."

In any event, it is not obvious that ALJ Reynolds merely adopted ALJ Francis's finding of "limited education" versus "illiterate" pursuant to *Drummond*. Rather, ALJ Reynolds's finding appears as well to be an independent finding made on the evidence before him. This independent finding is clearly supported by substantial evidence. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanaham v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely

because there exists in the record substantial evidence to support a different conclusion . . . . This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Id.* (alteration in original).

While record evidence showed that Caudill had a second-grade reading level and was diagnosed with developmental reading disorder, the record also showed the following: he admitted being able to read and write a grocery list; he successfully worked for many years; Dr. Cook opined that Caudill has at least a fair ability to understand, retain, and follow instructions; and he attended school into the twelfth grade and his school records showed that he averaged Bs, Cs, and Ds in high school.[5] This constitutes substantial evidence that Caudill is not "illiterate." Also, the ALJ found Caudill's description of his condition and ailments to be less than credible.[6] "The ALJ's crediblity findings are subject to substantial deference on review . . . ." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 288 (6th Cir. 2009) (quoting *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994)). This credibility assessment provides further evidence supporting the ALJ's finding of "limited education" as opposed to "illiterate." Thus, the ALJ's "limited education" finding is supported by substantial evidence, independently of the *Drummond* rule.

## II.    The ALJ properly categorized Caudill as an individual "closely approaching advanced age" rather than a person of "advanced age."

[5]Although ALJ Reynolds did not explicitly state in his hearing decision that Caudill attended school into the twelfth grade and that his grades averaged Bs, Cs, and Ds, the ALJ did refer to Caudill's "education" on several occasions. *See* 2008 SSI Decision at 9, 10.

[6]The ALJ found both Caudill's physical-health and mental-health symptoms to be less than credible. *See* 2008 SSI Decision at 5 (mental-health symptoms), 8 (physical-health symptoms).

The ALJ also properly categorized Caudill as an individual "closely approaching advanced age" rather than a person of "advanced age," notwithstanding Caudill's borderline-age status. Although Caudill's age at the time of ALJ Reynolds's hearing decision (approximately fifty-four and ten months) placed him in a borderline-age situation, the ALJ provided a sufficient explanation of his disability determination to assure the court that his decision was supported by substantial evidence. This is in accordance with the holding of *Bowie v. Commissioner of Social Security*, 539 F.3d 395 (6th Cir. 2008).

At the time the hearing decision was issued, Caudill was within two months of being re-classified from the "closely approaching advanced age" category to the "advanced age" category. Had he been classified in the "advanced age" category, Caudill would have been deemed disabled pursuant to Grid Rule 202.02. The ALJ, however, classified Caudill in the "closely approaching advanced age" category without further explanation. Under 20 C.F.R. § 416.963(b), the Social Security Administration "will not apply the age categories mechanically in a borderline situation." According to the Social Security Administration's Hearings, Appeals, and Litigation Law Manual (HALLEX), in borderline-age situations, the ALJ decides which age category to apply using a "sliding scale approach." Application of the Medical-Vocational Guidelines in Borderline Age Situations, HALLEX II-5-3-2, 2003 WL 25498826. Under this approach, "the claimant must show progressively more additional vocational adversity(ies)—to support use of the higher age—as the time period between the claimant's actual age and his or her attainment of the next higher age category lengthens." *Id.* Examples of such "additional vocational adversities" include being barely literate in English, having only a marginal ability to communicate in English, and having work

experience in unskilled jobs in one isolated industry or work setting. *Id.* Also, "[o]ther adverse circumstances in individual cases may justify using the higher age category." *Id.*

However, as this court held in *Bowie*, these regulations "do[] not impose on ALJs a *per se* procedural requirement to address borderline age categorization in every borderline case." *Bowie*, 539 F.3d at 399. Although ALJs must not apply the age categories mechanically and must "consider whether use of an older age category would be appropriate in a borderline case, nothing in this language obligates an ALJ to address a claimant's borderline age situation in his opinion or explain his thought process in arriving at a particular age-category determination." *Id.* "Rather," according to *Bowie*, "the regulation merely promises claimants that the Administration will 'consider' veering from the chronological-age default in borderline situations." *Id.* Quoting HALLEX language, we explained that "[a]bsent a showing of additional adversity(ies) justifying use of the higher age category, the adjudicator will use the claimant's chronological age—even when the time period is only a few days. *The adjudicator need not explain his or her use of the claimant's chronological age.*" *Id.* at 400. Bowie presented no record evidence that she suffered from any "additional vocational adversities" that might justify placing her in a higher age category, and her disability determination was otherwise supported by substantial evidence. *Id.* at 401. That being the case, we upheld an ALJ decision that used Bowie's chronological-age category even though the ALJ provided no explanation of his reasons for doing so. *Id.*

Caudill argues that dicta from *Bowie* demands vacating the ALJ's finding regarding Caudill's age category. However, it is *Bowie*'s holding, not its dicta, that applies to Caudill's case, such that the ALJ's decision should be upheld here just as it was in *Bowie*. The dicta in question

comes from a hypothetical example the *Bowie* court gave in explaining its decision. The court explained that, "[f]or example, substantial evidence might be lacking where an ALJ, with no explanation, places a claimant in the 'younger individual' age category who is 49 years and 11 months, unskilled, sedentary, barely literate, and whose only previous work experience was in the fishing industry." *Id.* Under this hypothetical, "the claimant's additional vocational adversities would be significant and would merit some discussion of proper age categorization in order to meet the substantial-evidence threshold." *Id.* In comparing Caudill's circumstances to those of the hypothetical example, the evidence shows that Caudill is "barely literate"—his second-grade reading level, developmental-reading-disorder diagnosis, and testimony of reading and paperwork difficulties—and that his work in the mining industry is at least as isolated as the fishing or forestry industries. To this extent, Caudill's scenario is similar to the hypothetical given by the *Bowie* court.

However, the differences between Caudill and the hypothetical are more striking, such that Caudill's case is controlled by *Bowie*'s holding instead of its dicta. Caudill's work is semi-skilled, not unskilled as in the hypothetical, and he is capable of performing light work, rather than sedentary work as in the hypothetical. Bowie could only perform unskilled, sedentary work, just as in the hypothetical, and yet the court still found "no evidence in the record that [she] suffered from any 'additional vocational adversities' that might justify placing her in the higher age category," *id.*, or that would even require the ALJ to explain the reasons for his age-categorization decision. Moreover, it is questionable whether the record truly evidences that Caudill is "barely literate,"[7]

---

[7]The term "barely literate" is not defined in the Code of Federal Regulations, HALLEX II-5-3-2, or the Social Security Administration's Program Operations Manual System.

given the fact that he can at least read and write a grocery list, he attended school all the way into the twelfth grade, and his high school records average Bs and Cs as well as Ds. ALJ Reynolds also found Caudill's testimony about his alleged limitations less than credible (even regarding his mental limitations, as discussed above). In *Bowie*, by comparison, although the ALJ "did not find Bowie's allegations regarding her limitations entirely credible to begin with," *id.*, he nonetheless "gave her the benefit of the doubt." *Id.*

In sum, Caudill's case compares much less obviously to *Bowie*'s hypothetical scenario than would at first appear. In fact, Bowie herself may even be more akin to the hypothetical than Caudill: Bowie had two limitations described in the hypothetical (unskilled work history and ability to do sedentary work) and she was given the benefit of the doubt regarding the credibility of her alleged limitations. Caudill, on the other hand, has at most one limitation (work history in an isolated industry) and some inconclusive and contradictory evidence of another limitation (supposedly being "barely literate"). Further, the ALJ found Caudill's alleged limitations to be less than credible. Although the two cases are not precisely on all fours, Caudill's case falls within *Bowie*'s holding.

The judgment of the district court is affirmed.

HELENE N. WHITE, Circuit Judge (concurring in part and dissenting in part). I concur in Part II of the majority opinion finding that the ALJ's decision not to classify Caudill as a person of advanced age was supported by substantial evidence. Although Caudill's argument is not without merit, on the facts of this case, I cannot say that the ALJ's failure to explain his use of Caudill's chronological age was reversible error. *See Bowie*, 539 F.3d at 399-400. In any event, Caudill is now older than 55, and thus can presumably reapply for benefits.

I respectfully dissent from my colleagues' conclusion in Part I, however. I first note that on my reading of the record, the ALJ rested his finding that Caudill had a "limited education" on the res judicata rule, not on his own independent analysis of the evidence. In his decision, ALJ Reynolds incorporated by reference the findings and conclusions in the prior decision rendered by ALJ Francis in 2001. ALJ Reynolds stated that pursuant to *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), he was bound by those previous findings unless presented with new or additional material evidence or changed circumstances. (2008 Decision, at Tr. 487.) Specifically, ALJ Reynolds stated:

> the undersigned takes administrative notice, by reference, of those findings and conclusions appearing in the record through the date of the prior decisions entered by Administrative Law Judge B.R. Francis on August 28, 2001, and [b]y Administrative Law Judge Richard Bentley on March 17, 2005 and April 24, 2007 except where they conflict with the findings of fact and conclusions of law herein. The 6th Circuit case of Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997) requires that consideration be given to the prior Administrative Law Judge decision which contains a finding of a claimant's residual functional capacity. The Drummond decision requires the undersigned as the adjudicator of this subsequent claim to adopt and be bound by the prior finding of a claimant's residual functional capacity *or other findings required at a step in the sequential evaluation process*. The undersigned cannot reexamine or redetermine the finding of a claimant's residual functional capacity *or other issues previously determined* in the absence of new and additional material evidence or changed circumstances.

(*Id.* at 486-87 (emphases added).) Although not totally clear, this language indicates that ALJ Reynolds thought himself bound by previous ALJs' determinations of RFC *and other issues* as a matter of res judicata or collateral estoppel. Although the record before ALJ Reynolds could have supported a finding of either "limited education" or illiteracy, ALJ Reynolds did not make his own determination of the issue. Because I conclude that *Drummond* does not settle questions regarding how principles of collateral estoppel apply in this case, I depart from the majority's opinion.

I agree that *Drummond* held that principles of res judicata apply to decisions of the Commissioner made through trial-type proceedings by ALJs. *Drummond* established that principles of res judicata bind the government to the same extent they bind claimants. 126 F.3d at 841-42. But the case does not describe *how* to apply res judicata or collateral estoppel in a given case. In *Drummond*, the Commissioner argued "that res judicata does not apply against the Social Security Administration because it was not a party to the proceedings before the ALJ." *Id.* at 840-41. This argument was based on 42 U.S.C. § 405(h), which provides that "[t]he findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing." The court "reject[ed] the Commissioner's contention that the Social Security Administration has unfettered discretion to reexamine issues previously determined absent new and additional evidence," and held that to the extent that § 405(h) binds claimants, "[p]rinciples of finality and fundamental fairness" require that it also bind the Commissioner. 126 F.3d at 842 (second quotation from *Lively v. Sec'y of Health & Human Servs.*, 820 F.2d 1391, 1392 (4th Cir. 1987)). Thus, "[j]ust as a social security claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner." *Id.*

There is no indication in *Drummond* that this Court considered argument about whether and how to apply traditional, common-law principles of res judicata and collateral estoppel in social security cases.

In *Hammer v. I.N.S.*, 195 F.3d 836 (6th Cir. 1999), this court enumerated five elements required for collateral estoppel to apply:

> (1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation, (2) the issue was actually litigated and decided in the prior action, (3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation, (4) the party to be estopped was a party to the prior litigation (or in privity with such a party), and (5) the party to be estopped had a full and fair opportunity to litigate the issue.

*Id.* at 840.[1] This Court has not yet decided "whether a party asserting collateral estoppel in a Social Security case, in addition to making the § 405(h) showing that a prior ALJ has made a finding on the same question sought to be litigated, must establish the traditional elements of collateral estoppel."[2]

---

[1]Other cases in this Circuit have stated the elements differently. In *Kosinski v. C.I.R.*, 541 F.3d 671 (6th Cir. 2008), this court identified four required factors:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Id.* at 675 (quoting *United States v. Cinemark USA, Inc.*, 348 F.3d 569, 583 (6th Cir. 2003)).

[2]42 U.S.C. § 405(h) provides:
The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided.

16

*Brewster v. Barnhart*, 145 F. App'x 542, 547 (6th Cir. 2005) (unpublished). In the unpublished opinion of *Rogers v. Commissioner of Social Security*, 225 F.3d 659, 2000 WL 799332, at *5 (6th Cir. 2000) (unpublished table opinion), this Court did apply principles of collateral estoppel to a social security disability case, with particular focus on the question whether "the party attempting to relitigate an issue had a full and fair opportunity to try the issue it had previously lost" and whether the issue in question was "essential to the prior judgment." *Id.* Prior to that case, in the unpublished opinion of *Ginnetti v. Sullivan*, 983 F.2d 1066, 1992 WL 393593, at *2 (6th Cir. 1992) (unpublished table opinion), this Court applied traditional collateral-estoppel rules in holding that an ALJ's determination regarding whether a claimant was "'without fault' in receiving overpayments of benefits" had preclusive effect. In *Brewster*, also unpublished, the court referenced *Rogers*, but declined to decide whether to apply "traditional collateral estoppel rules to cases also governed by § 405(h) because . . . even under the traditional collateral estoppel framework, [the second ALJ] was bound by [the first ALJ's] earlier finding on [the claimant's] past relevant work." *Brewster*, 145 F. App'x at 457.

Application of traditional rules of collateral estoppel would lead to the conclusion that ALJ Reynolds was not precluded from making his own de novo decision about Caudill's literacy. It is well-settled that both res judicata and collateral estoppel apply to trial-type proceedings by administrative agencies. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991) ("We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality."); *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 421 (1966). This Circuit has

repeatedly applied traditional common-law rules of collateral estoppel to assessing the preclusive effect of proceedings by administrative agencies, including decisions of immigration judges, *Hammer*, 195 F.3d at 840, the National Labor Relations Board, *Olchowik v. Sheet Metal Workers' Int'l Ass'n*, 875 F.2d 555, 557 (6th Cir. 1989), the Armed Services Board of Contract Appeals, *United States ex rel. Spectrum Control Sys., Inc. v. Staffco Constr., Inc.*, 107 F. App'x 453, 457-58 (6th Cir. 2004) (unpublished), and state administrative tribunals, *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 367-68 (6th Cir. 2007). These authorities, combined with our unpublished opinions in *Rogers* and *Ginnetti*, strongly suggest that traditional rules of collateral estoppel should apply to the decisions of ALJs in social security disability cases as well.

This conclusion is bolstered by practical considerations. If ALJs and courts are prevented from applying the traditional collateral estoppel test, *all* findings of ALJs in SSI hearings are binding on future ALJs considering claims by the same claimant, regardless of whether the issue is essential to the judgment or whether the claimant had a full and fair opportunity to litigate it. This would have the effect of requiring claimants to contest and appeal every finding that is immaterial to the outcome of their claim at the time of the proceeding, but that could later become material in a new claim. Here, that would have required Caudill to recognize that the literacy determination would become material to a new SSI claim after he turned 50, and to appeal the ALJ's 2001 decision of "not disabled" on the grounds that the ALJ's determination of his literacy, which had no effect on the outcome of the claim, was in error. This would require the court to devote energy to an issue having no actual bearing on the outcome of the claim. This standard would impose a burden on claimants, ALJs, and federal courts.

Applying traditional collateral estoppel rules, I would find that reconsideration of the issue of Caudill's literacy is not precluded. Caudill urges this court to distinguish *Drummond* on the basis that the determination of Caudill's literacy level was not essential to the 2001 determination of ALJ Francis, and thus that res judicata and collateral estoppel do not apply. It is true, as the majority points out, that in *Drummond* the first ALJ's determination of the claimant's residual functional capability — that she had a RFC for sedentary work rather than medium-level work — was not essential to the judgment insofar as either RFC determination would have resulted in a finding of "not disabled" at the time of the first decision. Likewise, here the first ALJ's determination of Caudill's literacy level — that he had limited education rather than illiteracy — was immaterial to the judgment because both findings would have resulted in a finding that he was not disabled as long as he was classified as a "younger individual." Yet *Drummond* did not discuss or consider application of the traditional collateral-estoppel test. I would do so here.

For issue preclusion to apply, the resolution of the issue must have been "necessary and essential to a judgment on the merits in the prior litigation." *Hammer*, 195 F.3d at 840; *see also Bobby v. Bies*, 129 S. Ct. 2145, 2152 (2009). "If a judgment does not depend on a given determination, relitigation of that determination is not precluded." *Bobby*, 129 S. Ct. at 2152. To determine whether an issue was essential to the prior judgment, "[t]he appropriate question . . . is whether the issue was actually recognized by the parties as important and by the trier as necessary to the first judgment. If so, the determination is conclusive between the parties in a subsequent action . . . ." Restatement (Second) of Judgments § 27, cmt. *j* (1982).

I would find that the issue of Caudill's literacy was not recognized by the parties or the ALJ as important or essential to the 2001 judgment. Although the 2001 decision referenced Caudill's educational history and the results of a test indicating that he reads at a second-grade level, and then found that he has a "limited education," that issue was not essential to the ultimate determination that Caudill had a "residual functional capacity to perform a restricted range of light work" and was therefore not disabled. (*See* 2001 Decision, at Tr. 87, 90, 92.) The vast majority of discussion in the 2001 decision concerned Caudill's physical impairments. (*See id.*, at Tr. 84-90.) A lesser portion of the decision discussed Caudill's intellectual functioning and IQ score, but that discussion did not focus in any meaningful way on his literacy level. (*Id.*, at Tr. 87-88.) Because Caudill would have been deemed not disabled regardless of whether he was found illiterate, the finding that he had a "limited education" was not essential to the judgment. *Cf. Rogers*, 255 F.3d 659, 2000 WL 799332, at *5 ("A finding that an applicant's skills were not transferable is not essential to a judgment denying benefits to that applicant.").

Further, Caudill lacked an incentive to litigate the issue of literacy in the initial proceeding. For collateral estoppel to apply, the "party to be estopped [must have] had a full and fair opportunity to litigate the issue." *Hammer*, 195 F.3d at 840. Such opportunity is lacking "where the opposing party 'ha[d] little incentive to defend vigorously' in the first action." *Kosinski v. C.I.R.*, 541 F.3d 671, 677 (6th Cir. 2008) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330-31 (1979)) (alteration in original). Because the issue of Caudill's literacy was immaterial to the outcome of his claim, he had no incentive to contest the ALJ's finding that he had "limited education" or to argue that the test showing him to have a second-grade reading level demonstrated functional illiteracy.

For these reasons, I do not believe *Drummond* controls the relevant issue in this case. I would hold that ALJ Reynolds erred in determining that he was compelled by *Drummond* to adopt the findings of ALJ Francis regarding Caudill's literacy in the absence of new additional evidence or a change in Caudill's circumstances. Because ALJ Reynolds merely adopted the findings of ALJ Francis, remand is appropriate for ALJ Reynolds to make his own determination as to Caudill's literacy. Although there is evidence that supports both a finding of illiteracy (Caudill's second-grade reading level, developmental reading disability, and testimony about his difficulty reading), and limited education (Caudill's school attendance through eleventh grade, admission that he has some ability to read, and past work history), the ALJ should independently weigh this evidence and make a determination based on it before this Court assesses the determination under the substantial evidence standard. I do not disagree with the majority that substantial evidence could be found on this record to support a finding of "limited education." But in order to defer to an ALJ's determination under the substantial-evidence standard, the ALJ must make his or her own determination of Caudill's literacy level based on the evidence.