# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-1980

_____

United States of America

*Plaintiff - Appellee*

v.

Philip Delgrosso, also known as Phillip Delgrosso

*Defendant - Appellant*

_____

No. 16-1981

_____

United States of America

*Plaintiff - Appellee*

v.

Jeffrey Cain

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: February 9, 2017
Filed: March 30, 2017

_____

Before SMITH, Chief Judge,[1] GRUENDER, and BENTON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

A jury found Philip Delgrosso and Jeffrey Cain guilty of conspiracy to distribute methamphetamine, money laundering, and conspiracy to commit money laundering. Delgrosso also was found guilty of failing to file Internal Revenue Service ("IRS") Form 8300. On appeal, Delgrosso argues that the district court[2] erred by (1) denying his motion for a new trial based on newly discovered evidence; (2) denying his motion for a new trial based on government misconduct; (3) instructing the jury on "willful blindness"; (4) denying his motion for a judgment of acquittal after the verdict; and (5) denying safety-valve relief at sentencing. Cain joins in Delgrosso's first and third points on appeal. For the reasons discussed below, we affirm.

## I. Background

Delgrosso and Cain operated an automobile dealership called Missouri Auto Group. In 2013, they became acquainted with Jerry Wright. Wright approached the two men with a proposed business arrangement: he would provide funds for them to purchase automobiles at dealer auctions, they would sell those automobiles on the

_____

[1] The Honorable Lavenski R. Smith became Chief Judge of the United States Court of Appeals for the Eighth Circuit on March 11, 2017.

[2] The Honorable Beth Phillips, United States District Judge for the Western District of Missouri.

Missouri Auto Group lot, and the three men would split the profits. According to Delgrosso, Wright admitted to them that he had a criminal past but claimed that he acquired his money through legitimate means such as scrapping metal, selling other cars, and saving money from working in prison.

In reality, Wright acquired the money by operating a drug trafficking organization ("DTO"). Associates of the DTO would purchase methamphetamine in Phoenix, Arizona and transport the methamphetamine back to Missouri for distribution. Wright continued to operate this DTO during his acquaintance with Delgrosso and Cain.

Delgrosso and Cain accepted Wright's offer, and they also hired him to work part-time at Missouri Auto Group as an independent contractor detailing cars. Over the next few months, Wright passed over $150,000 through Missouri Auto Group by providing cash to Delgrosso and Cain to purchase vehicles. For example, on one occasion, Cain purchased a vehicle in the name of Missouri Auto Group with more than $13,000 in cash provided by Wright. On other occasions, Delgrosso brought cash provided by Wright to Regions Bank to purchase cashier's checks in the name of Missouri Auto Group. Delgrosso then used these checks to purchase vehicles at 166 Auto Auction.

Eventually, following an investigation by Drug Enforcement Agency task force officer Brian Walsh and other law enforcement officers, the DTO was uncovered and its members arrested. As a result, thirteen of the DTO members, including Wright, pled guilty to methamphetamine and money laundering offenses. Delgrosso and Cain were charged with conspiracy to distribute methamphetamine, money laundering, and conspiracy to commit money laundering. Delgrosso also was charged with failure to file IRS Form 8300. Delgrosso and Cain proceeded to trial.

Previously, in response to an IRS subpoena to Missouri Auto Group, Delgrosso wrote an eleven-page letter detailing his relationship with Wright, stating that Wright had purchased multiple vehicles through Missouri Auto Group with funds that Delgrosso insisted were from legitimate sources. At trial, Delgrosso testified consistent with his letter. He denied any knowledge that Wright was involved with drug sales. He also insisted that he had questioned Wright about the source of the money before accepting his offer. However, Delgrosso admitted he never conducted a background check, confirmed Wright's ownership of the vehicles he claimed to own, or checked with any references or with Wright's probation officer. Cain declined to testify.

Wright invoked the Fifth Amendment and refused to testify at the trial of Delgrosso and Cain. However, other members of the DTO testified about their knowledge of the two men. They testified that Cain smoked and snorted methamphetamine with other members of the DTO. According to one member, Robert Cantrell, Cain requested that DTO members remove from the Missouri Auto Group lot a vehicle with five pounds of methamphetamine concealed in it because someone was coming to visit the lot. Cantrell also testified that Wright gave methamphetamine to him while Cain sat at the desk in front of them and that, on another occasion, Wright gave methamphetamine to someone else while in the same room as Delgrosso. Another member, Perry Adams, testified that Delgrosso called Wright "convict" and often admonished Wright about avoiding the appearance of unexplained wealth. The Government also introduced Delgrosso's past criminal convictions showing that he had previously attempted to launder money by converting illicit funds into a cashier's check.

At the end of the trial, the district court gave the jury a "willful blindness" instruction, stating that the jury may find Delgrosso and Cain acted "knowingly" if it found beyond a reasonable doubt that they "believed there was a high probability that the financial and monetary transactions [they engaged in with Wright] involved

-4-

funds derived from criminal activity and that they took deliberate actions to avoid learning of that fact." Neither defendant objected to this instruction. The jury found Delgrosso and Cain guilty on all counts. Delgrosso moved for a judgment of acquittal after the verdict, which was denied.

After the trial, Wright wrote an affidavit from prison claiming that he misled Delgrosso and Cain and that he believed they had no knowledge of the drug conspiracy. Prior to sentencing, Delgrosso and Cain filed motions for a new trial based on this newly discovered evidence and also based on government misconduct. The district court denied these motions.

At sentencing, Delgrosso argued that he met all of the requirements for safety-valve relief, including the full disclosure requirement. The district court disagreed, stating that Delgrosso's testimony "most certainly was not forthright and most certainly was not designed to come clean." Hence, the district court overruled Delgrosso's objection and sentenced both Delgrosso and Cain to 120 months' imprisonment, the statutory minimum for the methamphetamine-distribution-conspiracy count. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846. Delgrosso and Cain now appeal their convictions.

## II. Discussion

### A. Newly discovered evidence

Delgrosso and Cain both argue that the district court erred in denying their motions for a new trial based on Wright's post-trial affidavit. We review the denial of a motion for a new trial based on newly discovered evidence for abuse of discretion. *United States v. Duke*, 255 F.3d 656, 659 (8th Cir. 2001).

A defendant must satisfy five requirements to justify a new trial on this basis:

> (1) the evidence must have been discovered after trial; (2) the failure to discover this evidence must not be attributable to a lack of due diligence on the part of the movant; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be likely to produce an acquittal if a new trial is granted.

*Id.* Here, Delgrosso and Cain fail to satisfy the fifth requirement because Wright's affidavit would not "be likely to produce an acquittal if a new trial is granted." *See id.*

First, the affidavit itself likely would be inadmissible at a new trial. An affidavit offered in lieu of in-court testimony, if offered for the truth of the matter asserted in the affidavit, is hearsay evidence. *See* Fed. R. Evid. 801(c). "Hearsay is inadmissible unless it falls within an established exception." *United States v. Smith*, 591 F.3d 974, 980 (8th Cir. 2010). Delgrosso contends that Federal Rule of Evidence 804(b)(3) would provide such an exception because the affidavit is a statement against interest insofar as it may expose Wright to new criminal charges. However, even if so, given Wright's criminal record, it is far from clear that the district court would admit the affidavit under Rule 804(b)(3), which requires that the evidence be "supported by corroborating circumstances that clearly indicate its trustworthiness." *See* Fed. R. Evid. 804(b)(3)(B); *United States v. Halk*, 634 F.3d 482, 490 (8th Cir. 2011) (considering "the general character of the speaker" in determining the trustworthiness of a hearsay statement against interest (citation omitted)). Thus, for a jury to consider this new evidence, Wright likely would need to testify at a new trial, and Wright has not indicated that he is willing to testify.

Second, even if Wright testified or the affidavit were admitted, the Government could impeach Wright's credibility by introducing evidence of his seven prior felony convictions. *See* Fed. R. Evid. 609 (allowing use of prior criminal convictions to

-6-

impeach witness); Fed. R. Evid. 806 (allowing impeachment of hearsay declarant with "any evidence that would be admissible for those purposes if the declarant had testified as a witness"). Thus, as the district court recognized, Wright would have serious credibility issues, and his statements "could have actually bolstered the government's position."

Third, even if a jury believed Wright's statements, that does not mean that it likely would acquit Delgrosso and Cain. Wright's affidavit states that he told Delgrosso and Cain "half truths and . . . left numerous questions unanswered to shelter and protect them from the knowledge of the true illegal nature" of the source of his funds. For example, Wright claimed that he showed them "multiple receipts where certain weeks $8 to $10,000.00 dollars were made through selling metal to the scrapyard." But these statements do not prove that Delgrosso and Cain never realized the true nature of Wright's operation.

In contrast, the Government provided ample evidence that would allow the jury to conclude that Delgrosso and Cain knew or willfully blinded themselves to the fact that Wright acquired his cash through drug sales. The Government produced evidence that Cain smoked and snorted methamphetamine with other DTO members, watched Wright give methamphetamine to another DTO member, and ordered DTO members to move a vehicle loaded with methamphetamine off the Missouri Auto Group lot. The Government also produced evidence that Delgrosso called Wright "convict" and admonished him to avoid the appearance of unexplained wealth, was in the same room as Wright when he passed methamphetamine to someone else, and had previous experience laundering money by converting illicit funds into a cashier's check. This evidence was more than enough to allow a jury to infer that Delgrosso and Cain either knew or willfully blinded themselves to the fact that Wright bought vehicles with proceeds from methamphetamine sales. *See United States v. Ojeda*, 23 F.3d 1473, 1476 (8th Cir. 1994) (noting that a defendant's knowledge is generally proven through circumstantial evidence). Thus, even if a jury believes Wright's

statements, an acquittal is not likely. Because Delgrosso and Cain have failed to show that Wright's affidavit would be likely to produce an acquittal, the district court did not abuse its discretion in denying their motion for a new trial.

## B. Government misconduct

Delgrosso argues that he is entitled to a new trial because the Government engaged in misconduct that deprived him of due process of law in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, Delgrosso contends that the Government's case was predicated on police reports and an affidavit of task force officer Welch that contained false misrepresentations of fact and that the Government failed to disclose these false misrepresentations and other exculpatory evidence.[3] "We review the denial of a motion for a new trial based on a *Brady* violation for an abuse of discretion." *United States v. Ladoucer*, 573 F.3d 628, 636 (8th Cir. 2009).

As an initial matter, Delgrosso's motion for a new trial based on government misconduct was untimely. Federal Rule of Criminal Procedure 33(b)(2) requires that "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Here, the jury returned its guilty verdict on August 28, 2015, and Delgrosso filed this motion for a new trial on February 11, 2016, well after the 14-day deadline. Moreover, Delgrosso's *Brady* claim does not implicate newly discovered evidence.

---

[3]Delgrosso alleges eleven acts of misconduct, including the following: (1) Welch's affidavit indicated that there was a Chevy Avalanche with a hidden compartment containing methamphetamine being transported on a car hauler when in fact it was not; (2) Welch stated that Wright had an identification card allowing him access to restricted areas of 166 Auto Auction when in fact he did not; (3) the Government inflated the amount of money provided to Delgrosso from Wright to $150,000 when it was in fact less than $70,000; and (4) the Government failed to disclose financial records of Downstream Casino which would have indicated that Wright laundered money through the casino and not Missouri Auto Group.

Rather, Delgrosso was aware of this alleged misconduct during the trial. Indeed, as the district court noted, Delgrosso raised these same allegations "numerous times during the pendency of this case." Thus, his motion was untimely, and it may be properly rejected on this basis alone. *See United States v. Boesen*, 599 F.3d 874, 876, 878 (8th Cir. 2010) (affirming district court's ruling that motion for a new trial was untimely); *United States v. Oligmueller*, 198 F.3d 669, 671 (8th Cir. 1999) ("We may affirm the district court on any basis supported by the record.").

Even if the motion were timely, however, Delgrosso's *Brady* claim fails. "Under *Brady v. Maryland*, 'suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *United States v. Pendleton*, 832 F.3d 934, 940 (8th Cir. 2016) (quoting *Brady*, 373 U.S. at 87). "[E]vidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Keys*, 721 F.3d 512, 520 (8th Cir. 2013) (quotations omitted).

As the district court noted, Delgrosso has "allegations, not evidence," and even if Delgrosso had evidence of government misconduct, his allegations would not "have any probability of changing the outcome of this trial because they either relate to issues that are irrelevant or are directly contradicted by some strong evidence in this case." Indeed, Delgrosso presents no evidence showing that Welch's statements were false, that the Government suppressed evidence, or that any suppressed evidence was material. Therefore, the district court did not abuse its discretion in denying Delgrosso's motion for a new trial.

## C. Willful blindness jury instruction

Delgrosso and Cain argue that the district court erred by giving a willful blindness jury instruction because the evidence did not support an inference of deliberate ignorance. Because neither defendant objected to the jury instructions at trial, we review for plain error. *United States v. Garcia-Hernandez*, 803 F.3d 994, 996 (8th Cir. 2015). "[U]nder a plain-error standard of review, the party seeking relief must show that there was an error, the error is clear or obvious under current law, the error affected the party's substantial rights, and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Poitra*, 648 F.3d 884, 887 (8th Cir. 2011).

"A willful blindness instruction is appropriate when the defendant asserts a lack of guilty knowledge, but the evidence supports an inference of deliberate ignorance." *United States v. Haire*, 806 F.3d 991, 998 (8th Cir. 2015) (quotation omitted). "Ignorance is deliberate if the defendants were presented with facts putting them on notice criminal activity was particularly likely and yet intentionally failed to investigate." *United States v. Whitehill*, 532 F.3d 746, 751 (8th Cir. 2008). Thus, "[t]he evidence is sufficient to support the instruction if a jury could find beyond a reasonable doubt the defendants had either actual knowledge of the illegal activity or deliberately failed to inquire about it before taking action to support the activity." *Id.*

Delgrosso and Cain contend that they did inquire as to the source of Wright's money before going into business with him and so a jury could not reasonably find that they deliberately failed to inquire or investigate. In particular, Delgrosso argues that his eleven-page letter to the IRS and his trial testimony showed that he "actually inquired into where Wright obtained the cash he gave to Missouri Auto Group to purchase the vehicles."

However, Delgrosso and Cain ignore the fact that the jury was entitled to disbelieve their version of this conversation with Wright. *See United States v. Trotter*, 837 F.3d 864, 868 (8th Cir. 2016) ("Assessing the credibility of witnesses is a task for the jury."). Indeed, as previously noted, the Government provided sufficient evidence for the jury to infer that Delgrosso and Cain not only "deliberately failed to inquire" about the source of funds but that they had "actual knowledge of the illegal activity." *See Whitehill*, 532 F.3d at 751.

Moreover, even if the jury credited their version of this conversation, Delgrosso admitted that he never conducted a background check, confirmed Wright's ownership of the vehicles he claimed to own, or checked with any references or with Wright's probation officer. Delgrosso further indicated that he did not make such inquiries only because he was not hiring Wright to be in the "full-time employment of Missouri Auto Group," suggesting that he could have made such inquiries. Because Delgrosso admitted that he could have made further inquiries, the jury could have inferred that he and Cain "intentionally failed to investigate" once they were put on notice of criminal activity. *See id.* Therefore, it was not plain error for the district court to instruct the jury on willful blindness.

## D. Motion for judgment of acquittal

Delgrosso next argues that the district court erred in denying his motion for judgment of acquittal because the verdict was against the weight of the evidence. He claims that the evidence shows that he was not a knowing participant in the conspiracy and that he did not know the source of Wright's funds.[4] We review *de novo* the district court's denial of a motion for judgment of acquittal, viewing the

[4]Although Delgrosso argued in his motion that there was no testimony that he knew he must file an IRS Form 8300, he does not mention this argument on appeal. Therefore, we consider his argument on this count waived. *See United States v. Reinholz*, 245 F.3d 765, 775 n.4 (8th Cir. 2001).

evidence in the light most favorable to the verdict. *United States v. Paris*, 816 F.3d 1037, 1038-39 (8th Cir. 2016). We will reverse the denial only if no reasonable jury could have found Delgrosso guilty. *See id.* at 1039.

Here, as previously noted, sufficient evidence supported the jury's verdict. The jury reasonably could have inferred from the evidence presented that Delgrosso either knew or willfully blinded himself to the fact that Wright bought vehicles with proceeds from methamphetamine sales. Therefore, the district court did not err in denying Delgrosso's motion for acquittal.

## E. Safety-valve relief

Delgrosso next argues that the district court erred in denying him relief under the safety-valve provisions of 18 U.S.C. § 3553(f) and United States Sentencing Guideline ("U.S.S.G.") § 5C1.2(a). These provisions allow a district court to impose a sentence below the statutory minimum sentence if the defendant satisfies each of five requirements. *United States v. Brooks*, 722 F.3d 1105, 1108 (8th Cir. 2013). Delgrosso contends that he has satisfied all five of the requirements. Because the Government concedes that Delgrosso satisfied the first four requirements, the only remaining question is whether Delgrosso satisfied the fifth requirement: "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses." 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(a)(5). The district court found that Delgrosso did not satisfy this requirement because his testimony "most certainly was not forthright and most certainly was not designed to come clean." We review for clear error a district court's findings regarding the completeness and truthfulness of information provided by a defendant. *United States v. Hinojosa*, 728 F.3d 787, 790 (8th Cir. 2013).

Here, Delgrosso did not make a formal safety-valve proffer before sentencing. Nevertheless, he contends that his trial testimony and letter to the IRS "truthfully provided all information and evidence he had regarding the offenses." Delgrosso relies on our decision in *United States v. Honea*, in which a defendant received safety-valve relief even though he maintained that he never suspected that his codefendants were doing anything illegal. 660 F.3d 318, 326-27 (8th Cir. 2011).

However, this case clearly differs from *Honea*. First, in *Honea*, the district court granted safety-valve relief, and so we reviewed for clear error its conclusion that the defendant's statements were complete and truthful. *See id.* at 327-28. Here, the district court denied safety-valve relief, and so Delgrosso must show that the court clearly erred in concluding that his statements were not complete and truthful. Second, in *Honea*, we concluded that the defendant "admitted that he failed to investigate facts that put him on notice that criminal activity was likely occurring." *Id.* at 329. Here, Delgrosso never admitted that any facts put him on notice that criminal activity was likely occurring or that he failed to investigate them. Rather, he continued to press his innocence at sentencing. Thus, the district court was entitled to conclude from his statements that he did not truthfully provide to the Government all information and evidence he had concerning the offenses and that he therefore was not eligible for safety-valve relief. We find no clear error in this regard.

### III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____