# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 09-1027
_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Vincent Bertling, | * | |
| | * | |
| Appellee. | * | |

_____

No. 09-1028
_____

Appeals from the United States
District Court for the
Northern District of Iowa

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Karl Raymond Bertling, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: February 11, 2010
Filed: July 13, 2010

_____

Before LOKEN, Chief Judge,[1] GRUENDER and BENTON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

In September 2006, a jury found brothers Vincent Bertling and Karl Raymond Bertling guilty of conspiracy to endeavor to influence, obstruct, or impede the due administration of justice by murdering or otherwise intimidating witnesses. The conspiracy specifically targeted witnesses expected to testify in a federal case against Vincent, who was arrested in December 2005 on charges of being an unlawful user of a controlled substance in possession of firearms. The Bertlings hatched their ill-fated plot a few days after Vincent's arrest, in a telephone conversation recorded by jail authorities. That conversation was the centerpiece of the Government's evidence at trial.

After the verdict, the district court granted Vincent's and Karl's motions for a new trial on the conspiracy charge.[2] The court gave several reasons why it thought the verdict was problematic, *see United States v. Bertling*, 461 F. Supp. 2d 929, 939-41 (N.D. Iowa 2006), and announced its view that Vincent and Karl "were merely blowing off steam or venting their frustrations, as opposed to forming a highly serious conspiracy," *id.* at 941. Concluding that the evidence "weighs heavily enough against the verdict that a miscarriage of justice has occurred," the court set aside the verdict and ordered a new trial on the conspiracy charge. *Id.*

---

[1]The Honorable James B. Loken stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2010. He has been succeeded by the Honorable William Jay Riley.

[2]Vincent was also convicted on three counts of being an unlawful user of a controlled substance in possession of firearms, and Karl was convicted on one count of being an unlawful user of a controlled substance in possession of ammunition. Those convictions, along with the original sentences the Bertlings received on the unlawful possession charges, are not at issue here.

The Government appealed the district court's decision, and we reversed, holding that the district court had abused its discretion in granting the Bertlings' motions. *United States v. Bertling* (*Bertling I*), 510 F.3d 804, 808-09, 811 (8th Cir. 2007), *cert. denied*, 552 U.S. 1304 (2008). We found that the evidence "[did] not preponderate heavily against the jury's verdict that Vincent and Karl entered into a conspiracy to impede justice and then took overt acts in furtherance of that conspiracy." *Id.* at 808-09. Accordingly, we remanded to the district court with instructions to reinstate the verdict and resentence the Bertlings. *Id.* at 811.

On remand, the district court varied downward from the Bertlings' advisory sentencing guidelines ranges, based in part on its finding that neither Vincent nor Karl intended to "carry out the conspiracy." In particular, the court sentenced Vincent to 30 months' imprisonment (time served), a 3-month variance from the bottom of his advisory guidelines range of 33 to 41 months; and the court sentenced Karl to 18 months' imprisonment (time served), a 33-month variance from the bottom of his advisory guidelines range of 51 to 63 months. The Government appeals, and we again reverse.

At Vincent's sentencing hearing, the district court gave three reasons for its decision to vary from the advisory guidelines range. First, the court noted that Vincent's last criminal conviction before his "current federal problems" came when he was twenty-two years old. (Vincent was nearly thirty-four when he joined the alleged conspiracy and nearly thirty-seven at the time of sentencing.) Second, the court observed that Vincent had "a stable employment history and was a productive member of society." Third, the court found that Vincent "never intended to harm a witness or to intimidate a witness." The court explained that finding as follows:

> I'm also taking into consideration my view[,] which hopefully is not hair splitting but I'm open to the possibility that it is[,] that while the defendant formed an intent to join the conspiracy, in almost all—that he had no intent to carry out any objectives of the conspiracy. And in

almost every conspiracy case I've ever had—the typical case would be the drug conspiracy—there's always an intent to sell the drugs or to do something with the drugs. I mean, I've never seen a conspiracy case where there wasn't actual intent to carry out the objectives of the conspiracy and that I was persuaded that there was an intent to carry out the objectives of the conspiracy.

In this case, I think there was an agreement because the Eighth Circuit said so and I'm bound by that, and I intend to follow that faithfully. But I'll go to my grave believing Vincent Bertling never intended to harm a witness or to intimidate a witness.

At Karl's sentencing hearing, the district court identified three principal factors that contributed to its decision to vary from the advisory guidelines range. First, the court found that the offense involved "a mere threat," as opposed to a more serious form of obstruction of justice, such as a completed "act of extreme violence." *See* U.S.S.G. § 2J1.2 cmt. background. Second, the court discussed Karl's history and characteristics, including his past drug use, his successful completion of a drug treatment program, and the evidence that he has become "an excellent employee." Third, the court found that Karl did not have "any intent" to carry out the purpose of the conspiracy. The court explained that finding as follows:

I don't believe he had any intent to carry out a threat to injure witnesses or to substantially interfere with the administration of justice or interfere with the administration of justice in any event.

And I am absolutely bound and am trying as hard as I can to faithfully follow the circuit decision that the defendant is guilty of the conspiracy count. The circuit said that. Therefore, you are guilty of the conspiracy count. And I'm not in a position to second guess that now because I took an oath to uphold circuit law, and I intend to do that. But under the nature and circumstances of the offense, I find that you didn't have any intent to carry out the conspiracy.

The crux of the Government's argument is that the district court abused its discretion by relying on an "improper" or "irrelevant" factor in varying from Vincent's and Karl's advisory guidelines ranges. *See, e.g.*, *United States v. Cosey*, 602 F.3d 943, 946 (8th Cir. 2010) (per curiam) ("An abuse of discretion occurs when the court fails to consider a relevant factor that deserves significant weight, when it gives an irrelevant factor significant weight, or when the court commits a clear error in weighing the relevant factors." (quoting *United States v. Campbell*, 410 F.3d 456, 464 (8th Cir. 2005))). Specifically, the Government contends that the district court improperly substituted its view of the evidence concerning the Bertlings' criminal intent for the jury's verdict, which should have been conclusive on that issue. We agree that the district court's findings on the intent issue do not withstand scrutiny. Indeed, the merits of these appeals turn out to be lopsided, for the Bertlings ignore or misapprehend basic principles about the crime of conspiracy.

The Bertlings were charged with violating the general federal conspiracy statute, 18 U.S.C. § 371. "It is fundamental that a conviction for conspiracy under 18 U.S.C. § 371 cannot be sustained unless there is 'proof of an agreement to commit an offense against the United States.'" *Ingram v. United States*, 360 U.S. 672, 677-78 (1959) (quoting *Pereira v. United States*, 347 U.S. 1, 12 (1954)). The alleged purpose of the conspiratorial agreement in this case was to endeavor to influence, obstruct, or impede the due administration of justice by murdering or otherwise intimidating witnesses, in violation of 18 U.S.C. § 1503. In other words, the Bertlings allegedly conspired to engage in conduct prohibited by § 1503. *See United States v. Feola*, 420 U.S. 671, 687 (1975) ("[S]ince one can violate a criminal statute simply by engaging in the forbidden conduct, a conspiracy to commit that offense is nothing more than an agreement to engage in the prohibited conduct.").

The Supreme Court made clear in *Feola* that "in order to sustain a judgment of conviction on a charge of conspiracy to violate a federal statute, the Government must prove at least the degree of criminal intent necessary for the substantive offense

-5-

itself." *Id.* at 686; *see also Frohwerk v. United States*, 249 U.S. 204, 209 (1919) (Holmes, J.) ("[I]ntent to accomplish an object cannot be alleged more clearly than by stating that parties conspired to accomplish it."). Here, the rule set out in *Feola* meant that the Government had to prove that the Bertlings intended to influence, obstruct, or impede the due administration of justice by murdering or otherwise intimidating witnesses. *Cf. United States v. Wicker*, 80 F.3d 263, 267 (8th Cir. 1996) (applying the rule set out in *Feola* to the charge of conspiracy to commit mail fraud). The jury, of course, determined that the Government met its burden of proof, since it found Vincent and Karl guilty on the conspiracy charge. If the Bertlings wished to challenge their convictions based on either a perceived error in the jury instructions or a failure of proof regarding the intent element, they had the opportunity to do so in *Bertling I*. On remand following our decision to reinstate the jury's verdict, however, the question whether Vincent and Karl intended to influence, obstruct, or impede the due administration of justice was no longer open to debate. Under these circumstances, the district court's findings on the intent issue amounted to a declaration that no crime had been committed. We are therefore convinced that the district court's findings contradicted the jury's verdict and contravened this court's decision in *Bertling I*.

The Government points out that in *United States v. Campos*, 362 F.3d 1013 (8th Cir. 2004), we held that a district court "err[s] as a matter of law" if it imposes a sentence based on a finding that contradicts the jury's verdict, *id.* at 1015-16. The holding in *Campos* supports the Government's contention that the district court acted improperly in substituting its view of the evidence concerning the Bertlings' criminal intent for the jury's verdict. *See also United States v. Rivera*, 411 F.3d 864, 866 (7th Cir. 2005) ("Once the jury has spoken, its verdict controls unless the evidence is insufficient or some procedural error occurred; it is both unnecessary and inappropriate for the judge to reexamine, and resolve in the defendant's favor, a factual issue that the jury has resolved in the prosecutor's favor beyond a reasonable doubt."). The district court's error was compounded in this instance, since the court's findings also contravened a controlling appellate decision.

We recognize that *Campos* involved a peculiarity of drug cases—namely, calculating drug quantity—so some of the analysis in *Campos* might not apply in cases, like this one, dealing with a different offense. *See Campos*, 362 F.3d at 1015-16 ("Once the jury found beyond a reasonable doubt that the amount of methamphetamine Campos had intended to distribute was 50 or more grams, it was a legal impossibility for the district court to find by a preponderance of the evidence that the amount of methamphetamine Campos intended to distribute was less than 50 grams."). Nevertheless, we see no remotely plausible basis for holding that the "non-contradiction principle" adopted in *Campos* applies only in drug cases. On the contrary, other circuits have invoked the non-contradiction principle in cases that did not involve calculating drug quantity. *See, e.g.*, *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) (criminal sexual conduct: "[J]udge-found facts may not contradict the jury's verdict."), *cert. denied*, 560 U.S. ---, 2010 WL 1527001 (June 14, 2010); *United States v. Hunt*, 521 F.3d 636, 649 (6th Cir. 2008) (health care fraud, conspiracy to commit health care fraud, and making false statements relating to health care fraud: "[I]t would be improper for the judge in sentencing to rely on facts directly inconsistent with those found by the jury beyond a reasonable doubt."), *cert. denied*, 556 U.S. ---, 129 S. Ct. 2157 (2009); *United States v. Curry*, 461 F.3d 452, 461 (4th Cir. 2006) (mail fraud, wire fraud, and engaging in unlawful monetary transactions: "The court erred . . . in sentencing [the defendant] based on a conclusion that contravened the jury's verdict."); *United States v. Weston*, 960 F.2d 212, 218 (1st Cir. 1992) (threatening bodily injury with intent to retaliate for information given to law enforcement officials: "Although an acquittal is not always conclusive on an issue for sentencing purposes due to differing standards of proof, a guilty verdict, not set aside, binds the sentencing court to accept the facts necessarily implicit in the verdict." (internal citation omitted)), *abrogated in part on other grounds by Stinson v. United States*, 508 U.S. 36 (1993).

We also recognize that *Campos* was decided before the upheaval in federal sentencing law brought on by *United States v. Booker*, 543 U.S. 220 (2005). But we

think it plain beyond peradventure that the non-contradiction principle adopted in *Campos* survived *Booker*, as well as more recent decisions, such as *Rita v. United States*, 551 U.S. 338 (2007), *Gall v. United States*, 552 U.S. 38 (2007), and *Kimbrough v. United States*, 552 U.S. 85 (2007). *See, e.g.*, *Curry*, 461 F.3d at 460-61 (considering the district court's decision to grant a variance against the "backdrop" of *Booker* and post-*Booker* authorities, and holding that "[t]he court erred . . . in sentencing [the defendant] based on a conclusion that contravened the jury's verdict"); *see also Rivera*, 411 F.3d at 866 ("An argument based on *Booker* is hard to maintain when the cornerstone of the defendant's position is that the jury's actual verdict counts for nothing.").

The Government asserts that the district court's error requires us to vacate the Bertlings' sentences and remand for resentencing. The Bertlings' only meaningful counterargument posits that the district court did not give significant weight to its findings on the intent issue. That proposition is inconsistent with the district court's statements at the Bertlings' sentencing hearings, which leave no doubt that the disputed findings were among the principal reasons why the court granted the requested variances (see, for example, the excerpts we quoted, *supra*, at 4-5). To be sure, the district court discussed other reasons for varying from Vincent's and Karl's advisory guidelines ranges, but that fact alone does not allow us to affirm the sentences. *See Hunt*, 521 F.3d at 649 ("[I]t does not matter that the district court relied on a number . . . of relevant facts in its sentencing, if it also relied on facts that it could not properly consider. Thus we would not hesitate to reverse a sentence if a judge relied on numerous relevant facts but also relied, for instance, on the morning's horoscope."). Moreover, while the district court has considerable discretion under 18 U.S.C. § 3553(a) to consider "the nature and circumstances" of the conspiracy, among other things, that discretion does not extend to nullifying the jury's verdict, which we instructed the district court to reinstate in *Bertling I*. *See Hunt*, 521 F.3d at 649 ("Nothing in § 3553(a) suggests that Congress intended that sentencing judges should

rely on a defendant's innocence when the defendant has already been found guilty beyond a reasonable doubt.").

For the foregoing reasons, we vacate the Bertlings' sentences and remand for resentencing.[3]

_____

[3]We express no opinion about the various sentencing factors that the district court is permitted to consider on remand, including but not limited to the other reasons the court gave for granting the requested variances in the last round of sentencing hearings. Likewise, we express no opinion about either the substantive reasonableness of the Bertlings' previous sentences or the range of permissible sentences that might be imposed on remand.