# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3483

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Sorrell Honea, also known as Joe, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: May 12, 2011
Filed: November 4, 2011

_____

Before RILEY, Chief Judge, SMITH, Circuit Judge, and STROM,[1] District Judge.

_____

SMITH, Circuit Judge.

A jury convicted Sorrell "Joe" Honea of aiding and abetting the manufacture of 1,000 or more marijuana plants, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, but acquitted Honea of conspiring to manufacture 1,000 or more marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and aiding and abetting the possession of 100 or more but less than 1,000 marijuana plants with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § (2). At

_____

[1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

sentencing, the district court[2] determined that Honea qualified for the "safety valve" under 21 U.S.C. § 3553(f) and sentenced Honea below the statutory ten-year mandatory minimum to "time served"—20 days in county jail—and five years of supervised release. The government appeals, asserting that the district court improperly substituted its opinion of the evidence for the jury's verdict when it found that Honea's safety-valve statement under § 3553(f)(5) was objectively and subjectively truthful. We affirm.

I. *Background*

A. *Trial Testimony*

In August 2007, Agent Johnny Sowell of the 20th Judicial Drug Task Force received information from the 16th Judicial Drug Task Force that a large-scale marijuana growing operation was being conducted behind Honea's residence in Van Buren County, Arkansas, and that two Hispanic males were living in tents on the property and tending the marijuana plants. Law enforcement then obtained global positioning coordinates for Honea's residence and conducted aerial surveillance in an attempt to locate the marijuana operation.

Thereafter, law enforcement received information that Honea's daughter, Paula Cruz ("Paula"), would be traveling to Honea's residence to harvest some of the marijuana plants. In preparation for Paula's arrival, law enforcement set up surveillance on the road to Honea's residence. Agent Sowell and other agents saw Paula's truck leaving the area of Honea's residence. Agent Sowell requested that Arkansas State Trooper Kevin Brown conduct a routine traffic stop. Upon stopping the vehicle, Trooper Brown noticed chicken wire ensnared with small marijuana leaves and a machete in the back of the truck. Agent Sowell arrived within a few minutes and observed some hedge clippers in the back of the truck and marijuana in

---

[2]The Honorable G. Thomas Eisele, United States District Judge for the Eastern District of Arkansas.

the floorboard of the vehicle. Paula's son, Lonnie Joe "Joey" Day, informed Agent Sowell that Day had two marijuana joints in his pocket. Paula and Day were arrested.

That night, law enforcement went to Honea's residence and received consent from Honea to search his property for marijuana. During that search, agents discovered 430 harvested marijuana plants drying in Honea's barn. Agents then found an additional 9,215 marijuana plants growing behind Honea's property. While removing the marijuana plants the following morning, agents discovered a campsite, a system of black water hoses, and two trash bags full of processed marijuana within the operation site.

Honea was charged with conspiracy to manufacture 1,000 or more marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1) and 846 ("Count 1"), aiding and abetting the manufacture of 1,000 or more marijuana plants, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 ("Count 2"), and aiding and abetting the possession of 100 or more but less than 1,000 marijuana plants with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 ("Count 3").

At trial, Agent Sowell explained that the marijuana grow operation occurred on uninhabited land that Deltic Timber owned. According to Agent Sowell, Honea's property adjoins Deltic Timber's land and is separated only by a fence. Agent Sowell testified that, in order to remove all of the marijuana plants from the operation site, law enforcement and forestry officials had to "cut in" two new roads to facilitate the extraction process. He explained that a camp site was located within the operation and that there was a trail from Honea's chicken house that led down to the camp site and the grow operation.

Agent Brian Tatum of the 20th Judicial Drug Task Force testified that he assisted with the search of Honea's property and actually discovered the marijuana in Honea's barn. According to Agent Tatum, he then followed a "little open trail" and

located a couple of small marijuana plants. He then continued following the "well-traveled trail" and discovered a large amount of marijuana plants. He recalled seeing black hoses "running along the trails" and finding a campsite.

Deputy Wesley Potts of the Van Buren County Sheriff's Office testified that he saw "a lot of water hose," plastic cups with holes punched in the bottom, cultivating tools, bags of fertilizer, and sprinklers throughout the operation site.

A clerk for the Clinton, Arkansas, Water and Sewer Department testified as to the water usage at Honea's residence. According to the clerk, Honea's residence used 14,420 gallons in January 2007; 23,420 gallons in February 2007; 12,400 gallons in March 2007; 10,990 gallons in April 2007; 24,760 in May 2007; 24,270 gallons in June 2007; 23,220 gallons in July 2007; 63,660 gallons in August 2007; and 31,800 gallons in September 2007. The clerk then pointed out that, compared to the 63,660 gallons of water used in August 2007, Honea's residence had only used 25,810 gallons in August 2005; 10,360 gallons in August 2006; 10,170 gallons in August 2008; and 9,270 gallons in August 2009.

A water meter reader testified that, on August 21, 2007, he noticed that Honea's residence had high water usage—63,660 gallons. The meter reader drove to Honea's residence that day to notify Honea that he had a leak or high usage. According to the meter reader, during that meeting with Honea, Honea stated that he "had a leak and was taking care of it."

At trial, Paula, Honea's daughter and codefendant, explained that she learned about the marijuana grow operation in 2007 when her husband, codefendant Javier Cruz ("Javier"), told her that he and codefendant Santiago-Garcia Pedraza, a/k/a Jose Garcia ("Garcia"), were going to approach Honea and "ask him for land to grow marijuana." She recalled that about a week after a plane flew over the operation site, Javier and three other men cut down some of the marijuana plants and put them in

Honea's barn. A few days later, Honea called Paula and advised her that "there was some stuff, some equipment that needed to be got off his property." Paula testified that she, codefendant Day, and codefendant Lawrence Edward Watts drove to Honea's residence to remove the marijuana. According to Paula, while at Honea's residence, Honea asked Day to remove some chicken wire, "long scissors," and some hose from Honea's property. Upon leaving Honea's residence that night, Paula and Day were arrested. Officers discovered the chicken wire, big scissors, a machete, and marijuana in Paula's truck.

Day, Honea's grandson, testified that he first learned about the marijuana operation through his stepfather, Javier, about a week before it was discovered. On the night that Day was arrested, he went with his mother and Watts to Honea's residence because he wanted to see what the site looked like. According to Day, Honea asked him to remove the hoses from the crop so that Honea would not "get in trouble." He further testified that Honea asked him to take some chicken wire, clippers, and a machete away in the truck because "the Mexicans had left it [sic] there. [Honea] didn't want any trouble." Day testified that he loaded the requested items into his mother's truck.

Javier, Honea's son-in-law, testified that there were five people involved with the marijuana grow operation: Javier, Honea, Garcia, and two of Garcia's brothers. According to Javier, his role was to "seek out a place, a location where the plants could be planted." Javier stated that Honea's role was to allow others to "cut through his property" and "supply water." Javier testified that Garcia's two brothers stayed on the Deltic Timber property to help cultivate the plants. According to Javier, Honea knew that they were using water from his faucet to water the marijuana plants and was in agreement with their usage.

Javier explained that the marijuana grow operation started in May 2007 and lasted until August 2007. During that time, either Honea or Javier would turn on the

water each day at 8:00 a.m. and leave it on for the workers until about 4:00 p.m. But when the weather got hot and the rain stopped, the water remained on day and night. Likewise, Garcia testified that there was "plenty of rain" during the "first couple of months" but that the rain "became scarce" in August, so the men had to water "day and night."

Honea testified that he had no knowledge of the marijuana found in his barn and had "never messed with marijuana in [his] life." When asked about his meeting with Javier and Garcia at his residence, Honea testified that Javier brought Garcia to his residence to get rocks. According to Honea, Javier, a contractor, wanted to buy rocks from Honea. Honea told Javier that he could have the rocks and harvest them from a wooded area on Honea's property. Honea testified that he never, at any time, discussed growing marijuana with Javier and Garcia.

Honea also recalled his conversation with the meter reader in which the meter reader told him that he had a water leak and a high water bill. According to Honea, the water stemmed from a burst hose that he had just repaired going to his chicken house. Honea explained that he put a spigot on the hose by the corner of the chicken house so that the rock workers would not have to come up to the house to get water. According to Honea, no one ever told him that the water was needed for marijuana. He denied agreeing to permit anyone to cross his land to cultivate marijuana or helping anyone grow marijuana.

During the jury instruction conference, the government requested that the district court instruct the jury on deliberate indifference.[3] Honea objected, arguing

---

[3]The proffered instruction read:

You may find the defendant acted knowingly if you find beyond a reasonable doubt that the defendant was aware of a high probability that marijuana was being grown behind his property or that water from his

that "the evidence doesn't indicate that there was any deliberate indifference." The district court then referred to the comments on the instruction and concluded that such language "can be used if desired. It is not needed, it just emphasizes that negligence is not sufficient." The court then sustained Honea's objection to the instruction.[4]

---

residence was being used to help grow marijuana, or that marijuana was being stored in his barn and that he deliberately avoided learning the truth. The element of knowledge may be inferred if the defendant deliberately closed his eyes to what otherwise would have been obvious to him.

[4]With regard to Count 2—aiding and abetting—the district court instructed the jury as follows:

> In Count 2 of the Indictment, the Defendant SORRELL "JOE" HONEA is charged with aiding and abetting Santiago Garcia-Pedraza, Javier Hernandez Cruz, or one or more of his co-defendants in the crime of manufacturing marihuana.
>
> The crime of manufacturing marihuana has two essential elements, which are:
>
> *One*, Santiago Garcia-Pedraza, Javier Hernandez Cruz, or one or more of Defendant's co-defendants manufactured marihuana;
>
> *Two*, Santiago Garcia-Pedraza, Javier Hernandez Cruz, or one or more of Defendant's co-defendants knew they were manufacturing marihuana.
>
> A person may be found guilty of the crime of manufacturing marihuana even if he personally did not do every act constituting the offense charged if he aided and abetted the commission of manufacturing marihuana.
>
> In order to have aided and abetted the commission of the crime of manufacturing marihuana as charged in Count 2 of the Indictment, the

The jury found Honea guilty of Count 2—aiding and abetting—but acquitted him of Counts 1 and 3.

## B. *Safety-Valve Proffer*

Following the jury's guilty verdict, the probation office prepared a presentence investigation report (PSR) for Honea. The PSR assigned Honea an offense level of 30 and a criminal history category of I, resulting in a Guidelines range of 97 to 121 months' imprisonment. But Honea was subject to a mandatory minimum of ten years under 21 U.S.C. 841(b)(1)(A)(vii) because his offense involved 1,000 or more

---

Defendant SORRELL "JOE" HONEA must before, or at the time the crime was committed:

(1) have known that the crime of manufacturing marihuana was being committed as alleged in Count 2; and

(2) have knowingly acted in some way for the purpose of causing, encouraging, or aiding the commission of that crime.

For you to find SORRELL "JOE["] HONEA guilty of manufacturing marihuana by reason of aiding and abetting, the Government must prove beyond a reasonable doubt that all the elements of manufacturing marihuana were committed by some person or persons and that the Defendant aided and abetted that crime; otherwise, you must find SORRELL "JOE" HONEA not guilty of this offense.

You should understand that merely being present at the scene of an event, or merely acting in the same way as others or merely associating with others, does not prove that a person has become an aider and abettor. A person who has no knowledge that a crime is being committed or about to be committed, but who happens to act in a way which advances some offense, does not thereby become an aider and abettor.

marijuana plants. Accordingly, the PSR calculated his range as 120 to 121 months' imprisonment, with a statutory mandatory minimum of 120 months' imprisonment.

After reviewing the PSR, the district court sent the parties a letter order "to express [its] concern about the application of the statutory mandatory minimum sentence in this case and to ask whether Mr. Honea might qualify for the 'safety valve.'" The district court noted that Honea was "acquitted . . . on 2 of the 3 counts," including "the most serious charge—conspiracy to manufacture marijuana (Count 1)[,] as well as the charge of aiding and abetting the possession with intent to distribute marijuana (Count 3)." The court surmised that Honea's conviction for "aiding and abetting the manufacture of marijuana (Count 2)" was "based principally on the jury's finding that he permitted the other Defendants to cross his property to access the adjoining land where the grow operation was located and also provided them access to his water supply." According to the court, "no competent evidence" existed that "Honea profited in any way from the manufacture or distribution of the marijuana." The court also cited Honea's lack of a "criminal record."

The court was particularly concerned that Honea would "receive the longest sentence of any Defendant in this case"—10 years—despite being, in the court's "judgment, among the least culpable." The court pointed out that "Honea was offered, but refused, plea deals at least as favorable (and perhaps more so) as those offered and accepted by some of his co-Defendants." The court expressed its view that a "manifest injustice" would result with the imposition of a ten-year sentence, but it was "unaware . . . of any legal basis, other than possibly the safety valve, that might permit the Court to sentence Mr. Honea to less than 10 years."

The court recognized that Honea bore the burden of establishing by a preponderance of the evidence that he met each of the five eligibility requirements for the safety valve. According to the court, the only contested safety-valve requirement appeared to be the "full disclosure requirement." The court noted that

"[n]either Mr. Honea's jury conviction nor his prior denials of any personal wrongdoing prevent[ed] him from being safety[-]valve eligible" because "a defendant may wait until the sentencing hearing to satisfy the safety valve's full disclosure requirement." The court sought the views of both parties regarding Honea's eligibility for the safety valve.

Honea's counsel responded that, to satisfy the full disclosure requirement, Honea was

> prepared to make a full and truthful disclosure with regard to the convicted crime of aiding and abetting in a written submission to the Assistant U.S. Attorney that is consistent with his position at trial. In his submission, which will mirror the aforementioned elements of the mental state of knowingly, Mr. Honea will disclose that he deliberately avoided asking any questions or learning the truth about the drug activities of his co-defendants. He will further admit that he should have known that his co-defendants were committing illegal acts when he allowed them to use the water from his property in the grow operation and to cross his property in order to access the grow operation. In light of the deliberate-indifference alternative to actual knowledge, Mr. Honea's position at trial, and his limited knowledge, albeit deliberately ignorant, of the specific activities of his co-defendants, Mr. Honea's submission will establish by a preponderance of the evidence that it is a full and truthful disclosure of all of the information that he possesses with regard to the convicted crime.

In response, the government "concede[d] that [Honea] [met] the first four requirements of Section 3553(f) and that the only issue before the Court with regard to the safety valve" was whether Honea satisfied the full disclosure requirement. The government asserted that Honea's trial testimony directly conflicted with the jury's verdict because Honea "categorically denied all knowledge of any illegal activity," while the jury "found that the defendant knowingly aided and abetted manufacturing the marijuana—a verdict that necessarily requires that the jury found the defendant

-10-

to be untruthful." As a result, the government argued that Honea "should be barred, as a matter of law, from receiving any benefit from the safety valve." Additionally, the government urged the court to reject Honea's assertion of "deliberate ignorance," explaining:

> [T]he defendant is going to try to qualify for the safety valve by submitting a written statement that he should have know[n] his co-defendants were committing illegal acts but deliberately avoided asking questions or learning the truth. This theory of "deliberate ignorance," however, was not submitted to the jury. In fact, the United States prepared and requested a jury instruction on "deliberate ignorance" during trial, but the defendant objected to it[,] and the Court refused to give it to the jury.
>
> * * *
>
> The jury . . . found that the defendant *knew*, i.e. not should have known, that a crime was being committed, and the defendant should not be allowed to perpetrate a fraud on the court and the criminal justice system in an attempt to qualify for the safety valve.

The government stated that if Honea insisted on seeking the safety valve under a deliberate ignorance theory, then it objected to a written submission of information and instead asked that Honea be subject to an interview with a federal agent, prior to the sentencing hearing.

Thereafter, the district court ordered Honea "to make an in-person [safety-valve] disclosure." The court rejected the government's argument that the court should bar Honea, as a matter of law, from receiving the safety valve because "[t]he Government's position, if accepted, would arguably impinge on Honea's constitutional rights to trial by jury and to testify in his defense." The court also found an "inherent inconsistency in the Government's position" because

by acquitting Honea of the conspiracy count, the jury clearly rejected the testimony of Javier Cruz and Jose Garcia that Joe Honea joined their conspiracy to manufacture marijuana. Thus, applying the Government's logic, Cruz and Garcia would have to be deemed at least as culpable as Honea in regard to offering false testimony at trial. Yet, the Government has requested that their ten year sentences be cut in half to five year terms.

The court inferred that the government's decision to reward Honea's codefendants "for their trial testimony, while taking a contrary position to Honea," "support[ed] an argument that the Government, by contesting Honea's eligibility to qualify for the safety valve, is, in effect, seeking to punish him for exercising his constitutional rights and putting the Government to the task of proving its case."

The court next addressed the government's assertion that Honea is "somehow foreclosed" from testifying that "he should have known that . . . Javier Cruz and Jose Garcia were growing marijuana on the land adjacent to his property and that the water he provided was being used to further that effort" because "a theory of 'deliberate indifference' was not submitted to the jury." The court rejected this argument, explaining:

> At trial, the Government sought to have the jury instructed on deliberate indifference. However, Honea's counsel opposed the instruction. The evidence at trial supported the proffered instruction and the Court might well have given it but for the objection, which the Court assumes was a tactical decision. The fact that the instruction was not given does not prevent Honea from asserting that the truth is that he was deliberately indifferent or willfully blind to the true purpose for which his water was being used and his land accessed. A Florida district court, rejecting the same argument, noted "§ 3553(f)(5) is concerned with the defendant's post-conviction statement, not with legal rulings made by the judge prior to sentencing."

(Quoting *United States v. Freeman*, 139 F. Supp. 2d 1364, 1374 (S.D. Fla. 2001).)

The court also cited the "general disagreement" between the parties regarding "the extent to which, if any, the jury verdict establishing Honea's guilt circumscribes the Court's authority in assessing his the [sic] truth of his safety-valve statement." The court found "compelling authority . . . for the proposition that the sentencing judge may believe a defendant's protestations of innocence, made at trial and in his safety valve statement, and grant safety valve relief despite a jury's verdict to the contrary." (Citing *United States v. Sherpa*, 110 F.3d 656 (9th Cir. 1996); *Freeman*, 139 F. Supp. 2d at 1364.) The court, as in *Freeman*, rejected the idea that "'a post-conviction safety valve statement proclaiming innocence is, as a matter of law, untruthful and incomplete.'" (Quoting *Freeman*, 39 F. Supp. 2d at 1370.) The court concluded that its role was to make an independent assessment of the truthfulness of Honea's safety valve statement and that it could rely on information not presented to the jury, such as the government offering to place Honea on pretrial diversion, the court's opportunity to observe Honea's codefendants independently of the jury, and the facts contained in the PSR.

On September 8, 2010, Honea and his attorney met with federal prosecutors and a federal agent to proffer his safety-valve statement. When asked if he "deliberately avoid[ed] asking questions or learning the truth about the drug activities of [his] codefendants," Honea answered, "I guess I did because I trusted them. They was supposed to be getting rock." But when asked if he thought his codefendants "were up to something fishy," he answered "[n]o" and that he had "[n]o reason at all" to suspect that. He "didn't think they was doing anything wrong or they wouldn't be there. If [he had] thought they were doing something wrong, [he] would have called the law [himself]." According to Honea, he did not think that he should have known that his codefendants were committing illegal acts when he allowed them to use the water because he "didn't allow them to use the water. They stole the water. [He] didn't know they was using it. [He] hadn't even got a water bill at the time." Honea had nothing to tell the federal prosecutors regarding whose idea the marijuana grow

operation was because he has "never messed with any junk in [his] life." When asked whether "it's not that you thought that these guys were doing something wrong and you didn't want to ask, it's that you simply had no idea," Honea responded, "None whatsoever." Honea then confirmed his counsel's understanding of why he did not ask questions of his son-in-law and other codefendants. His counsel stated:

> Well, I think you need to understand . . . is if he'd asked questions, he may have found out. But he didn't ask questions. He didn't ask questions because, as he said, he didn't think he needed to because he trusted them. But I think in hindsight he thinks if he'd asked questions and maybe see what they were doing, he probably would have found out.

Honea then responded, "That's right, I would have."

### C. *Sentencing*

At sentencing, the district court stated that it had considered not only Honea's PSR but also the PSRs of his codefendants—Garcia, Javier, Day, and Paula. The district court also stated that it had read and considered Honea's safety-valve proffer, as well as the government's following motions: (1) a motion for downward departure under U.S.S.G. § 5K1.1 for Watts, (2) a motion for reduction of sentence under Federal Rule of Criminal Procedure 35 for Garcia, (3) a § 5K1.1 motion for Paula, and (4) and a Rule 35 motion for Javier.

The district court added a letter to the record that Javier wrote to Honea while Javier was in jail in October 2008. The court had read the letter, "[i]n which [Honea's] son-in-law is urging [Honea] to not go to trial." Javier instructs Honea, "Don't go to trial, just take a plea. You're a smart man, I know you'll make the right decision."

In reviewing the 18 U.S.C. § 3553(a) factors, the court concluded that Honea is "a person who could easily be deceived and manipulated and in some respects view[ed] him as a victim of his own family's criminal avarice." The court found "no

-14-

need to protect the public from further crimes by [Honea]" because "[h]e has no criminal history, he's disabled, [and] he does the best he can to get along with limited talents and resources." The court found "[i]t . . . obvious to all concerned that to impose a ten-year mandatory minimum sentence on Mr. Honea would result in an immense disparity and unfair sentence."

The court then determined that Honea qualified for the safety valve, explaining:

> The Court finds Mr. Honea's safety valve disclosure to be truthful under my interpretation of the law. I specifically find that Mr. Honea is completely convinced and *subjectively* believes that he is making truthful testimony. Alternatively, I find that his safety valve statement is more likely true than not true, *objectively* stated.

(Emphasis added.)

The court then sentenced Honea "to imprisonment for time served . . . 20 days . . . and impose[d] a term of supervised release of five years."

## II. *Discussion*

On appeal, the government argues that the district court improperly substituted its opinion of the evidence for the jury's verdict when it found that Honea's safety-valve statement was "objectively" truthful. According to the government,

> [b]ased on the [jury] instructions, the jury, by its verdict, necessarily found beyond a reasonable doubt that Honea—despite his testimony and safety valve statement to the contrary—knew that the crime of manufacturing marijuana was being committed and that Honea knowingly acted in some way for the purpose of causing, encouraging, or aiding the commission of that crime.

-15-

As a result, the government asserts that the district court's finding that Honea's safety-valve statement was "objectively" truthful is irreconcilable with the jury's verdict.[5]

The government also maintains that the district court erred in sentencing Honea under the safety-valve provision after finding that Honea "subjectively" believed his safety-valve statement was truthful. According to the government, this court has never held that a defendant may qualify for the safety valve based on his "subjective" belief of his truthfulness. Additionally, the government asserts that the district court erroneously interpreted the safety-valve provision to require only that a defendant "subjectively" believe that his statement is true.

> Pursuant to the safety-valve provision, a district court

> shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, *if the court finds at sentencing*, after the Government has been afforded the opportunity to make a recommendation, that . . .

>> (5) not later than the time of the sentencing hearing, *the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan*, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f)(5) (emphasis added).

---

[5]The government has only challenged the district court's application of the safety valve to Honea. It has not asserted any additional procedural errors in sentencing or challenged the substantive reasonableness of Honea's sentence.

The defendant bears the burden of proving "that he qualifies for this relief, and we review for clear error the district court's findings about the completeness and truthfulness of a defendant's provision of information." *United States v. Aguilera*, 625 F.3d 482, 488 (8th Cir. 2010). "Affirmance is required if the record supports the court's findings, regardless of which party is favored." *United States v. Alvarado-Rivera*, 412 F.3d 942, 947 (8th Cir. 2005) (en banc)."'In making its assessment of the truthfulness of a safety valve proffer, the district court is entitled to draw reasonable inferences from the evidence.'" *United States v. Nguyen*, 608 F.3d 368, 378 (8th Cir. 2010) (quoting *United States v. Soto*, 448 F.3d 993, 996 (8th Cir. 2006)). As the Eleventh Circuit has explained, "the responsibility for determining the truthfulness of the information the defendant provided to the Government [is] the [judge's]." *United States v. Espinosa*, 172 F.3d 795, 797 (11th Cir. 1999) (per curiam) (concluding that district judge erred in deferring to government as to whether defendant's statement satisfied § 3553(f)(5)).

We have previously declined to "take sides" in the "debate" over whether "a guilty verdict . . . preclude[s] safety valve relief for a defendant whose safety-valve statement contradicts the verdict." *Aguilera*, 625 F.3d at 488 ("We need not take sides in the *Reynoso*[6] debate, because the district court adopted Aguilera's proposed interpretation and did not clearly err in denying safety-valve relief."). In the present case, we again decline to affirmatively decide the issue because we find no contradiction between Honea's safety-valve statement and the jury's verdict finding

---

[6]"[T]he Second Circuit [has] held that to qualify for safety-valve relief, a defendant must prove 'both that information he or she provided to the Government was objectively true and that he or she subjectively believed that such information was true.'" *Id*. (citing *United States v. Reynoso*, 239 F.3d 143, 150 (2d Cir. 2000)).

Honea guilty of aiding and abetting the manufacture of 1,000 or more marijuana plants, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.[7]

Section 841(a)(1) provides that "it shall be unlawful for any person *knowingly* or intentionally . . . to manufacture . . . a controlled substance." (Emphasis added.) "[T]he knowledge element of a violation of a criminal statute can be proved by demonstrating either actual knowledge *or deliberate ignorance*." *United States v. Hristov*, 466 F.3d 949, 952 (11th Cir. 2006) (emphasis added) (quotation and citation omitted).

> "[D]eliberate ignorance . . . is based on the alternative to the actual knowledge requirement at common law that if a party has his suspicion aroused but then deliberately omits to make further enquiries, because he wishes to remain in ignorance, he is deemed to have knowledge." [*United States v. Rivera*, 944 F.2d 1563,] 1570 [(11th Cir. 1991)] (internal quotation marks omitted). "To act 'knowingly,' therefore, is not necessarily to act only with positive knowledge, but also to act with an awareness of the high probability of the existence of the fact in question." *Id*. (internal quotation marks omitted).

*Id*. at 952–53.

We have explained that "[i]gnorance is deliberate if the defendant was presented with facts that put him or her on notice that criminal activity was particularly likely, yet the defendant intentionally failed to investigate those facts."

---

[7]We also recognize that Honea exercised his right to testify at trial. Thus, we must "apply the safety valve statute so as not to interfere with [his] right to testify at trial." *United States v. Morones*, 181 F.3d 888, 890–91 (8th Cir. 1999) (citing *United States v. Shrestha*, 86 F.3d 935 (9th Cir. 1996) ("The fact that [the defendant] denied his guilty knowledge at trial and at sentencing after his confession to the customs agents does not render him ineligible for the safety valve reduction as a matter of law.")).

*United States v. Chavez-Alvarez*, 594 F.3d 1062, 1068 (8th Cir. 2010) (holding evidence was sufficient to support finding that, even if defendant had no actual knowledge that he was acting in furtherance of methamphetamine distribution ring, his ignorance was based on his decision not to ask any questions about the suspicious circumstances of his employment).

In his safety-valve proffer statement, Honea admitted that he failed to investigate facts that put him on notice that criminal activity was likely occurring. *See id*. Specifically, Honea's counsel stated that

> if [Honea had] asked questions, he may have found out [about the criminal activity]. But he didn't ask questions. He didn't ask questions because, as he said, he didn't think he needed to because he trusted them. But I think in hindsight he thinks if he'd asked questions and maybe see what they were doing, he probably would have found out.

In response, Honea stated, "That's right, I would have." This statement is an admission by Honea of his deliberate ignorance.

In evaluating the truthfulness of Honea's safety-valve statement, the district court was permitted to "draw reasonable inferences from the evidence." *See Nguyen*, 608 F.3d at 378 (quotation and citation omitted). Based on the jury's acquittal of Honea on the conspiracy count—Count 1—and the count of aiding and abetting the possession with intent to distribute marijuana—Count 3— the district court reasonably concluded that "the jury rejected significant portions of the testimony offered by Javier Cruz, Paula Cruz, and Jose Garcia." The court then had to reconcile the jury's acquittal of Honea as to Counts 1 and 3 with its finding of guilt as to Count 2. It reasonably reconciled the verdicts by finding that

> [t]he factual predicate for the count of conviction was . . . most likely based on a finding that Honea permitted those responsible for the

growing operation, including his son-in-law, to use his water and to cross his land, which was necessary in order to access the forest property adjacent to his property on which the marijuana was planted.

Honea admitted in his safety-valve statement that, in hindsight, he would have discovered the criminal activity occurring on his land had he asked questions. Because the "knowingly" element of § 841(a)(1) may be proven by demonstrating deliberate ignorance, *see Hristov*, 466 F.3d at 952, there is no conflict between the jury's guilty verdict as to Count 2 and Honea's concession in his safety-valve statement that he was deliberately ignorant. Therefore, we hold that the district court did not clearly err in finding that Honea's safety-valve statement "is more likely true than not, objectively stated."[8]

---

[8]Like the district court, we reject the government's contention that Honea cannot rely on a "deliberate ignorance" theory in his safety-valve statement because such instruction was not submitted to the jury. "[Section] 3553(f) is concerned with the defendant's post-conviction statement, and not with legal rulings made by the judge prior to sentencing." *Freeman*, 139 F. Supp. 2d at 1374. "Such rulings, like all other matters in the record, are certainly relevant under § 3553(f)(5) and may inform a judge's ultimate decision, but they do not delineate the factual parameters by which a safety valve statement is evaluated." *Id*.

The dissent concludes that the district court's finding that Honea's safety-valve statement is objectively true "patently contradicts the jury's guilty verdict." *See infra*. Although we conclude that Honea's statement *does not* contradict the jury's verdict, we note the dissent's misplaced reliance on *United States v. Bertling*, 611 F.3d 477 (8th Cir. 2010). In that case, "the district court varied downward from the [defendant's] advisory sentencing guidelines ranges, based in part on its finding that neither [defendant] intended to 'carry out the conspiracy.'" *Id*. at 479. On appeal, the government argued that the district court "abused its discretion by relying on an 'improper' or 'irrelevant' factor in varying from [the defendants'] advisory guidelines ranges." *Id*. at 480. More specifically, the government asserted "that the district court improperly substituted its view of the evidence concerning the [defendants'] criminal intent for the jury's verdict, which should have been conclusive on that issue." *Id*. In

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

RILEY, Chief Judge, dissenting.

The panel majority concludes "there is no conflict between the jury's guilty verdict as to Count 2 and Honea's concession in his safety-valve statement that he was deliberately ignorant." Ante at 20. I respectfully dissent (1) because Honea did not admit deliberate ignorance in his safety-valve statement, and (2) because the district court's "finding that Honea's safety-valve statement 'is more likely true than not, objectively stated,'" patently contradicts the jury's guilty verdict.

"[I]n United States v. Campos, 362 F.3d 1013[, 1015-16] (8th Cir. 2004), we held that a district court 'err[s] as a matter of law' if it imposes a sentence based on a finding that contradicts the jury's verdict." United States v. Bertling, 611 F.3d 477,

---

reversing the district court, this court found that "the district court acted improperly in substituting its view of the evidence concerning [the defendants'] criminal intent for the jury's verdict." *Id*. at 481. According to the court, "[w]hile the district court has considerable discretion under 18 U.S.C. § 3553*(a)* to consider 'the nature and circumstances' of the conspiracy, among other things, that discretion does not extend to nullifying the jury's verdict . . . ." *Id*. at 482 (emphasis added).

*Bertling*, however, is distinguishable because it involved the district court's application of 18 U.S.C. § 3553*(a)*, not § 3553*(f)*. Unlike § 3553(a), § 3553(f) specifically states that "if *the court* finds at sentencing" that "the defendant has truthfully provided" information and satisfied the other enumerated factors, then the safety-valve provision applies. (Emphasis added.) Furthermore, we note that *Bertling* was decided *before Aguilera*, yet this court in *Aguilera* did not cite *Bertling* in addressing the defendant's argument "that safety-valve relief may be granted to a defendant who maintains that he is innocent after a jury's guilty verdict." 625 F.3d at 488.

-21-

481 (8th Cir. 2010) (second alteration in original). See also United States v. Rivera, 411 F.3d 864, 866 (7th Cir. 2005) ("Once the jury has spoken, its verdict controls unless the evidence is insufficient or some procedural error occurred; it is both unnecessary and inappropriate for the judge to reexamine, and resolve in the defendant's favor, a factual issue that the jury has resolved in the prosecutor's favor beyond a reasonable doubt."). We explained in Campos, "It is axiomatic that a fact proved beyond a reasonable doubt cannot simultaneously be disproved by a preponderance of the evidence." Campos, 362 F.3d at 1016.

In Bertling, we determined the "non-contradiction principle" survived "the upheaval in federal sentencing law brought on by United States v. Booker, 543 U.S. 220 (2005)," Rita v. United States, 551 U.S. 338 (2007), Gall v. United States, 552 U.S. 38 (2007), and Kimbrough v. United States, 552 U.S. 85 (2007). Bertling, 611 F.3d at 482. The Bertling jury convicted the Bertling brothers of conspiring to influence, obstruct, or impede justice by murdering or otherwise intimidating witnesses. Id. at 480-81. During sentencing, the district court, contrary to the jury's verdict, found the Bertlings lacked criminal intent to carry out the conspiracy, and then varied downward from the advisory Guidelines sentencing range. Id. at 479-80. Applying the non-contradiction principle, we held the district court's discretion under 18 U.S.C. § 3553(a) did "not extend to nullifying the jury's verdict," id. at 482, and concluded the district court erred in substituting its own view of the evidence concerning criminal intent for the jury's verdict, see id. at 480. The result must be the same under 18 U.S.C. § 3553(f). Section 3553(f) neither expressly nor impliedly authorized the district court to make a fact finding contrary to the jury's verdict. Under section 3553(f), such a contrary finding is still "inappropriate."

In deciding the district court's finding of objective truthfulness does not contradict the guilty verdict, the panel majority relies on the general proposition that "the 'knowingly' element of § 841(a)(1) may be proven by demonstrating deliberate ignorance" under certain limited factual circumstances. Ante at 20. A deliberate

ignorance (or willful blindness) instruction "allows the jury to impute knowledge to the defendant of what should be obvious to him, if it found, beyond a reasonable doubt, a conscious purpose to avoid enlightenment." United States v. Barnhart, 979 F.2d 647, 651 (8th Cir. 1992) (quoting United States v. Hiland, 909 F.2d 1114, 1130 (8th Cir. 1990) (internal marks omitted)). But deliberate ignorance does not apply to this appeal for two reasons.

First, Honea's proffer does not admit a deliberate effort to avoid actual knowledge or "conscious purpose to avoid enlightenment" of criminal activity. The vast majority of Honea's proffer consists of Honea flatly denying any knowledge of the marijuana or any criminal wrongdoing just as he testified at trial. See ante at 13-14. Honea's proffer does not establish Honea deliberately avoided asking questions or turned a blind eye because he suspected criminal activity and wanted to avoid learning the truth. Rather, Honea states he never thought he needed to ask questions because he trusted his family members to gather rocks from his property like they told him they would. Honea's "concession" that, in "hindsight," he might have learned more if he had asked questions and had "see[n] what they were doing," ante at 19, is neither remarkable nor an admission of deliberate ignorance; it is speculative reflection. The district court's factual finding to the contrary is clearly wrong.

Second, the jury's guilty verdict leaves no room for deliberate ignorance. The government requested a deliberate ignorance instruction, but the district court refused to give it over Honea's tactical objection. Absent an instruction explaining deliberate ignorance, the jury had no legal basis to conclude Honea's purported deliberate ignorance (first raised after his conviction) satisfied the knowledge requirement of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Our cases make clear "the instruction should not be given out in all cases because, despite the instruction's cautionary disclaimer, there is a 'possibility that the jury will be led to employ a negligence standard and convict a defendant on the

-23-

impermissible ground that he should have known [an illegal act] was taking place.' . . . thereby relieving the government of its constitutional obligation to prove the defendant's knowledge beyond a reasonable doubt." Barnhart, 979 F.2d at 651-52 (quoting United States v. White, 794 F.2d 367, 371 (8th Cir. 1986) (alteration in original)). Without any instruction explaining the complexities of our deliberate ignorance jurisprudence, that possibility becomes overwhelming and assumes constitutional proportions.

How can we say the jury found, beyond a reasonable doubt, Honea had a conscious purpose to avoid enlightenment when the district court never instructed the jury to consider that issue? In the absence of an appropriate legal instruction, we should not permit, much less expect, juries to equate knowledge with deliberate ignorance based upon the jurors' personal views or common understanding of the law. To join the panel majority, I would have to presume the jury not only ignored the district court's instruction to apply the law as given in the instructions, but also managed to find Honea deliberately ignorant–not merely negligent or reckless–without any standard to guide their deliberations. I am unable to do so.

The minimal knowledge instructions in this case did not give the jury any hint deliberate ignorance was legally sufficient to find Honea guilty. The only issue before the jury was Honea's actual knowledge of the specific criminal activity. Honea took the stand and denied any knowledge of the marijuana. The jury rejected Honea's testimony and found him guilty. To reach that verdict, the jury necessarily found beyond a reasonable doubt Honea knew of the illegal marijuana operation and knowingly aided and abetted it.

The instructions charged the jury by declaring that the jury could not find Honea guilty of Count 2 unless the government proved beyond a reasonable doubt "Honea must before, or at the time the crime was committed:

-24-

(1) have known that the crime of manufacturing [marijuana] was being committed as alleged in Count 2; and

(2) have knowingly acted in some way for the purpose of causing, encouraging, or aiding the commission of that crime."

In finding Honea's safety-valve statement that he had no knowledge of the marijuana "more likely true than not, objectively stated," the district court impermissibly contradicted the only reading of the verdict supported by the jury instructions in this case. The district court erred as a matter of law. See Bertling, 611 F.3d at 481.

I would reverse and remand for resentencing.

_____