# United States Court of Appeals

### For the Eighth Circuit

_____

No. 24-1140

_____

United States of America

*Plaintiff - Appellee*

v.

Walter Dushun Holmes, Jr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Western

_____

Submitted: March 20, 2025
Filed: May 15, 2025

_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

A jury found Walter Dushun Holmes, Jr. guilty of conspiracy to distribute controlled substances, *see* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and the district

court[1] sentenced him to 188 months' imprisonment. Holmes Jr. now appeals, raising several challenges to the district court's rulings. We affirm.

## I. Background

In August 2022, a federal grand jury indicted Holmes Jr.'s father—Walter Holmes, Sr.—Monetessa Packineau, and two others with conspiracy to distribute controlled substances, among other offenses. A month later, the grand jury added Holmes Jr. as a defendant, charging him with the distribution conspiracy. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. While Holmes Sr. and Packineau executed plea agreements, Holmes Jr. proceeded to trial.

At trial, Holmes Jr. requested the court issue an order sequestering witnesses, which the court granted. The Government called multiple witnesses, including former co-defendant Packineau, who testified she bought fentanyl from both Holmes Sr. and Holmes Jr. for her personal use. The Government also called A.P., who testified that Holmes Jr. regularly "fronted" her fentanyl for sale and sold her fentanyl for her personal use. Prior to trial, the Government had provided Holmes Jr. with interviews of A.P., where she disclosed that she not only received drugs from Holmes Jr., but also from another source, J.B.

On the third day of trial, Holmes Jr. sought to call his father as a witness. But the Government resisted, submitting recorded jail phone calls between Holmes Jr. and Holmes Sr. that the Government argued violated the sequestration order Holmes Jr. had requested. The court agreed with the Government and excluded Holmes Sr. as a witness. Holmes Jr. moved for a mistrial based upon the exclusion of his father—the district court denied his motion.

---

[1]The Honorable Daniel M. Traynor, United States District Judge for the District of North Dakota.

While the jury deliberated, the district court provided two supplemental scheduling instructions to the jury. First, the court inquired whether the jury preferred to deliberate past 5:00 p.m. or to return at 9:00 a.m. the next morning. The court indicated that if the jury believed deliberations past 5:00 p.m. would be useful, it would permit the jury to continue until 6:30 p.m. The court later sent a second supplemental instruction clarifying that if the jury had not reached a verdict by 6:30 p.m., they would reconvene the following morning at 9:00 a.m. Shortly after 6:30 p.m., the jury reached its guilty verdict. Observing that one juror cried as the verdict was read, Holmes Jr. objected to the court's instructions, arguing that the instructions pressured the jury into reaching a hasty verdict. He later moved for a new trial on that ground, but the district court denied his motion.

The district court sentenced Holmes Jr. to 188 months' imprisonment. Holmes Jr. then filed a second motion for a new trial alleging a *Brady*[2] violation, arguing that the Government had suppressed evidence of its witness, A.P., admitting to obtaining drugs from J.B. during the same time frame as this drug conspiracy. The district court denied the motion, finding no *Brady* violation because the undisclosed evidence was cumulative of the information already available to Holmes Jr. Holmes Jr. now appeals.

## II. Discussion

Holmes Jr. advances several arguments. First, he challenges the court's determination that he violated the sequestration order and the court's decision to exclude Holmes Sr. as a witness. Second, he argues the district court's deliberation instructions coerced the jury into reaching its verdict. Third, he contends that the court abused its discretion when it refused to grant a new trial for the alleged *Brady* violation. Finally, Holmes Jr. argues that the court committed procedural error in sentencing him and imposed a substantively unreasonable sentence.

---

[2]*Brady v. Maryland*, 373 U.S. 83 (1963).

## A. Sequestration Violation

We begin with Holmes Jr.'s argument that the district court erred in finding he violated the sequestration order and in excluding Holmes Sr. from testifying. We review the district court's ruling that Holmes Jr. breached the sequestration order for "abuse of discretion, granting wide latitude to the court and requiring the moving party to show prejudice." *United States v. Engelmann*, 720 F.3d 1005, 1012 (8th Cir. 2013). A district court abuses its discretion when it misapplies the law or relies on clearly erroneous facts. *United States v. Stover*, 650 F.3d 1099, 1106 (8th Cir. 2011). If a district court determines that its sequestration order was violated, it has "wide latitude in deciding how to respond to the impropriety." *United States v. Calderin-Rodriguez*, 244 F.3d 977, 985 (8th Cir. 2001).

Holmes Jr. contends the district court committed two errors: first, it relied on clearly erroneous facts in finding that he shared "a play-by-play of the testimony" with Holmes Sr. And second, it misapplied the law in determining that the conversations violated the sequestration order.

Regarding the first, Holmes Jr. argues that he "did not relay specific testimony or in any way portray a way Holmes Sr. could tailor his testimony." The recordings tell a different story—Holmes Jr. relayed testimony by former co-defendant and Government witness Packineau. And after Holmes Sr. expressed concern that the Government could use his testimony against him, Holmes Jr. told his father that Holmes Sr. would "have to get up there," and testify in Holmes Jr.'s defense, otherwise the Government would "slam dunk" Holmes Jr. Holmes Sr. concluded he would "have to fall on the sword" for his son. The district court listened to these recordings, and did not clearly err in finding that Holmes Jr. relayed trial testimony to his father and provided his father advice "as to what information he needed to convey at the stand."

Holmes Jr. also argues that the district court misapplied the law in finding that the conversations violated the sequestration order. He contends that post-trial

amendments to Federal Rule of Evidence 615 demonstrate that the court's specific order only operated to exclude Holmes Sr. from the courtroom, not to prevent Holmes Jr. from discussing trial testimony with his father. While these post-trial amendments might support Holmes Jr.'s interpretation, the district court was bound to apply the precedent of this circuit, *cf. United States v. Collins,* 321 F.3d 691, 698 n.5 (8th Cir. 2003), which interpreted the unamended Rule 615 to extend beyond "situations where a witness is present in the courtroom while another witness is testifying." *Engelmann*, 701 F.3d at 878. In *Engelmann*, we interpreted Rule 615 to reach out-of-court communications from one witness who "directly disclosed details" of earlier testimony to another witness who would testify on the same subject. *Id.* Accordingly, the district court did not err here in holding the parties to this court's own interpretation of Rule 615 in *Engelmann*.[3] Having neither relied on clearly erroneous facts nor erred in applying the law, we conclude that the district court did not abuse its discretion. And given the gravity of the violation, we cannot say that excluding Holmes Sr. from testifying went beyond the district court's "wide latitude" in deciding how to remedy the violation. *See Calderin-Rodriguez*, 244 F.3d at 985. Detecting no abuse of discretion, we affirm the district court's exclusion of Holmes Sr.

## B. Jury Deliberation Instruction

Holmes Jr. next argues that the district court coerced the jury into reaching a verdict when it informed the jurors that if they had not reached a verdict by 6:30 p.m., they would break for the evening and reconvene the following morning at 9:00 a.m. Though Holmes Jr. characterizes the district court's scheduling communications as "supplemental jury instructions" and invokes our "coercion" test

---

[3]The Government also contends that Holmes Jr. waived his right to argue this issue on appeal. Because we conclude the district court did not abuse its discretion, we need not reach the waiver question. *See Godfrey v. Pulitzer Pub. Co.*, 276 F.3d 405, 412 n.13 (8th Cir. 2002).

governing those instructions, we disagree that the communications here qualify as "jury instructions." A review of our case law—including the cases Holmes Jr. cites—indicates that "supplemental jury instructions" include communications that clarify statements of law in the original instructions or convey rules governing jurors and their duties. *See, e.g., United States v. Williams*, 91 F.4th 1281, 1283 (8th Cir. 2024) (evaluating supplemental jury instruction that clarified the meaning of the statutory term "in furtherance of" in the original jury instruction); *United States v. Hagan*, 412 F.3d 887, 890 (8th Cir. 2005) (analyzing supplemental instruction advising deadlocked jurors to reconsider their positions as part of their duty to deliberate). But our research has yielded no case—nor has Holmes Jr. supplied one—where we have treated scheduling communications with an un-deadlocked jury as "supplemental jury instructions."

Regardless, Holmes Jr.'s argument that the district court's communications amounted to coercion fail. Even if we did treat these communications as "jury instructions," as Holmes Jr. urges we should, we would review them for abuse of discretion, *Williams*, 91 F.4th at 1282, and find them permissible so long as they were not coercive. *United States v. Evans*, 431 F.3d 342, 347 (8th Cir. 2005). Holmes Jr. argues the communications were coercive because 1) they implied the jury should reach a verdict by 6:30 p.m. and 2) a juror cried during the delivery of the verdict. Yet this case bears no hallmark of coercion—the court never suggested that the jury had only a certain amount of time to deliberate. *See United States v. Ybarra*, 580 F.3d 735, 739-40 (8th Cir. 2009) (rejecting argument that instructing deadlocked jurors to reconsider their positions at 2:00 p.m. instead of the following morning was coercive by causing jurors to hurry up and decide the case by the end of the day). Rather, the content of the communication was informational, explaining the scheduling of deliberations after regular business hours. Nor does a juror crying while the verdict was read, absent other evidence of compulsion, suggest coercion— she may simply have been overcome by the emotion of sitting in judgment of another person. *See United States v. Marchant*, 774 F.2d 888, 895 (8th Cir. 1985). And when the court polled the jurors following the verdict, the crying juror re-affirmed her decision, therefore eliminating any inference of coercion. *Cf. United States v.*

-6-

*Sims*, 999 F.3d 547, 553-54 (8th Cir. 2021). Accordingly, even treating the court's scheduling communications as "jury instructions," they did not coerce the jury into a premature verdict, and therefore we detect no abuse of discretion.

## C. Alleged *Brady* Violation

We next turn to Holmes Jr.'s argument that he is entitled to a new trial because the Government violated *Brady* by failing to disclose additional evidence that trial witness A.P. obtained drugs from individuals other than Holmes Jr. We review allegations of *Brady* violations *de novo*, *United States v. Beckman*, 787 F.3d 466, 492 (8th Cir. 2015), and denials of motions for a new trial based on a *Brady* violation for an abuse of discretion. *United States v. Delgrosso*, 852 F.3d 821, 827 (8th Cir. 2017).

Under *Brady v. Maryland*, "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). But the Constitution is not violated every time the Government fails or chooses not to disclose evidence that might prove helpful to the defense. *Kyles v. Whitley*, 514 U.S. 419, 436-37 (1995). For example, there is no *Brady* violation where the Government fails to disclose evidence that is cumulative of evidence already available to the defendant. *United States v. Anwar*, 880 F.3d 958, 969 (8th Cir. 2018).

Here, the undisclosed information was cumulative of A.P.'s earlier interviews already in Holmes Jr.'s possession well before trial. The withheld evidence revealed she acquired drugs from both Holmes Jr. and J.B. during overlapping time periods. The undisclosed evidence included the following: a report summarizing one of the disclosed interviews, two reports summarizing interviews with individuals who claimed A.P. bought drugs from J.B., and Facebook messages between J.B. and A.P. showing she obtained drugs from J.B. during the same time frame as the drug conspiracy in this case. As Holmes Jr. acknowledged in his opening brief, in the

-7-

interviews the Government disclosed to him, A.P. admitted to obtaining drugs from several people including J.B. Because information that A.P. obtained drugs from J.B. was otherwise available to the defendant, it is cumulative. *See Helmig v. Fowler*, 828 F.3d 755, 761 (8th Cir. 2016) (noting that the government does not violate *Brady* when undisclosed evidence is cumulative of other evidence already available to the defendant). Therefore, the district court did not err in finding no *Brady* violation and thus did not abuse its discretion in denying Holmes Jr.'s motion for a new trial.

## D. Sentence

Holmes Jr. also argues that the court committed procedural error in sentencing him and imposed a substantively unreasonable sentence. We disagree.

Holmes Jr. contends that the district court committed procedural error by failing to explain its chosen sentence, which included an upward variance from the statutory mandatory minimum sentence of 120 months' imprisonment to 188 months' imprisonment. Holmes Jr. did not object to this alleged error during sentencing, so we review for plain error. *See United States v. Vaughn*, 519 F.3d 802, 804 (8th Cir. 2008). "Under a plain-error standard of review, the party seeking relief must show that there was an error, the error is clear or obvious under current law, the error affected the party's substantial rights, and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Delgrosso*, 852 F.3d at 828 (internal alteration omitted).

"Although the district court has discretion to depart from the Guidelines, the court must consult those Guidelines and take them into account when sentencing." *Molina-Martinez v. United States*, 578 U.S. 189, 193 (2016) (internal quotation marks omitted). Further, "[i]n explaining the chosen sentence and analyzing the relevant § 3553(a) factors, a district court is not required to provide a full opinion in every case." *United States v. Hill*, 552 F.3d 686, 691 (8th Cir. 2009) (internal quotation marks omitted). Rather, it simply "must set forth enough to

satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Id.* (internal quotation marks omitted).

Holmes Jr. asserts that "the [district] court did not adequately explain the upward departure in the hearing or in the Statement of Reasons."[4] The record belies Holmes Jr.'s assertion. At sentencing, the district court stated that it decided to impose a sentence outside of the advisory guidelines range after considering "the entire file in this matter . . . the sentencing guidelines, [and] the sentencing factors under 18 U.S.C. § 3553(a)." The district court also explained the role the factors weighed in favor of its sentence: the fentanyl distributed as part of the offense conduct was "particularly dangerous," Holmes Jr.'s criminal history demonstrated a propensity for recidivism, he was on federal supervision at the time he committed the offense, and prior efforts to address Holmes Jr.'s addictions proved unsuccessful. Thus, we are satisfied that the district court had a reasoned basis for its decision and did not commit plain, procedural error in sentencing Holmes Jr. *See United States v. Feemster*, 572 F.3d 455, 463 (8th Cir. 2009) (en banc) (holding that district court provided adequate explanation where it "offered three justifications for the variance").

Finally, we address the substantive reasonableness of Holmes Jr.'s sentence. Holmes Jr. argues the district court's "extraordinary departure" from the guidelines was not supported by the § 3553(a) sentencing factors. We review this question under a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 52 (2007). "A district court abuses its discretion when it (1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." *Feemster*, 572 F.3d at 461 (internal quotation marks omitted). Where a sentence is outside the

[4]Holmes Jr. incorrectly alleges the district court's sentence was an "upward departure" from the guidelines—rather, the district court imposed an upward *variance*.

advisory guidelines range, we "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* at 461-62.

Holmes Jr. argues that his sentence of 188 months' imprisonment is unreasonable because the district court gave undue weight to his previous federal conviction—a factor that the guidelines already took into account. While courts must use caution when supporting a substantial upward variance with factors already reflected in the guidelines, *see United States v. Martinez*, 821 F.3d 984, 989-90 (8th Cir. 2016), "factors that have already been taken into account in calculating the advisory Guidelines range can nevertheless form the basis of a variance." *United States v. Thorne*, 896 F.3d 861, 865 (8th Cir. 2018) (per curiam). Here the district court explained that the previous federal conviction, when coupled with a prior uncounted drug conviction, would have made Holmes Jr. a career offender. And it expressed concern that Holmes Jr. was still on supervision for his previous federal conviction when he committed this crime, demonstrating an "incredible lack of good judgment" and "level of criminality" that is "beyond the hope of any form of reform." The weight the district court placed on this factor, even if partially accounted for by the guidelines, was not undue. *See id.* We conclude that Holmes Jr.'s sentence is not substantively unreasonable.

## III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____