# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-3384
_____

United States of America

*Plaintiff - Appellee*

v.

Michael Sylvara

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: November 20, 2025
Filed: April 8, 2026
[Unpublished]
_____

Before BENTON, GRASZ, and STRAS, Circuit Judges.
_____

PER CURIAM.

A jury found Michael Sylvara guilty of social security fraud and making false declarations before the court, in violation of 42 U.S.C. § 408(a)(5) and 18 U.S.C. § 1623(a). He moved to dismiss his indictment or for a new trial before sentencing,

arguing the government suppressed exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The district court[1] denied his motion, and we affirm.

As relevant here, the Social Security Administration (SSA) provides two types of benefits. Social Security Disability Insurance Program (SSDI) benefits replace lost income for those who become disabled after paying into the SSA system, and Supplemental Security Income Program (SSI) benefits provide "the bare minimum, poverty level funds to survive" for "those people that haven't paid into the [SSA] system or haven't done enough work credits to qualify for" SSDI.

Sylvara's father applied for both types of benefits in 2015, and the SSA approved his applications in November 2016. The SSA specifically determined Sylvara's father was entitled to (1) $11,573 in SSI benefits for the period between his applications and when he became eligible for SSDI, (2) $8,739 in SSDI benefits for the period between when he became eligible and approval of his applications, and (3) between $1,500 and $1,700 in monthly SSDI benefits going forward. Sylvara was appointed as his father's representative payee, and he set up an account with Academy Bank to receive his father's benefits. The SSA deposited the past due SSDI and SSI benefits into this account on January 4, 2017, and February 22, 2017, respectively.

In 2019, the SSA received a tip that Sylvara had misused his father's benefits for himself. It opened an investigation, and Sylvara was ultimately indicted for converting his father's SSDI benefits, in violation of § 408(a)(5). When Sylvara's case was first tried, the jury could not reach a unanimous verdict, so the district court declared a mistrial. The government then sought and obtained a superseding indictment, again charging Sylvara with converting his father's SSDI benefits, and adding counts for theft of government property, in violation of 18 U.S.C. § 641, and for making false declarations before the court during the first trial, in violation of

---

[1]The Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri.

§ 1623(a). After his second trial, the jury found Sylvara guilty of converting his father's SSDI benefits and making false declarations but not guilty of theft of government property.

The evidence presented at Sylvara's trials largely overlapped. Relevant here, the government asked the district court to admit evidence Sylvara had converted his father's SSI benefits, although he was not charged with this, to show his "knowledge, intent, common scheme, and absence of mistake or accident." The district court decided this evidence was admissible, and the government's witnesses testified Sylvara made eight large withdrawals from the Academy Bank account, totaling almost $17,000, between January 9, 2017, and March 28, 2017. The witnesses also described the SSA's investigation and how the SSA evaluated what amounts Sylvara used for his father versus for himself. Specifically, Dan Krahn, a Special Agent for the SSA's Inspector General's Office, testified that the SSA determined Sylvara converted over $42,000 of his father's SSDI benefits by subtracting the funds Sylvara spent on his father from the total amount of benefits the SSA paid. Notably, Krahn explained the SSA "gave [Sylvara] credit" for all the funds he claimed to have spent on his father, even when he could not document an expense.

To support his argument that he had not willfully converted his father's benefits, Sylvara testified his father agreed to use his two lump sum payments to repay Sylvara for providing food and shelter while his applications were pending and to use his monthly SSDI benefits to pay Sylvara prospectively for care. The SSA's regulations allow beneficiaries to use their SSI benefits to reimburse someone for care they provided while the beneficiary's applications were pending, but they do not allow beneficiaries to use their SSDI benefits to pay for prospective care.

Before sentencing, the Probation Office filed a Presentence Investigation Report (PSR), recommending the district court increase Sylvara's base offense level by six because he converted more than $40,000 but less than $95,000 of his father's benefits. *See* U.S. Sentencing Guidelines Manual § 2B1.1(b)(1)(D) (U.S. Sentencing Comm'n 2024). Sylvara objected, arguing the enhancement did not

apply because the government's evidence did not show he converted more than $40,000. The government filed a sentencing memorandum in support of the Probation Office's recommendation, and it attached an exhibit from the SSA detailing how it calculated that Sylvara converted approximately $42,000 of his father's SSDI benefits.

The government did not provide the exhibit to Sylvara before his trials, and the exhibit clearly states the SSA determined he did not convert his father's SSI benefits. So Sylvara moved to dismiss his superseding indictment or for a new trial, arguing the government's failure to disclose the exhibit violated his right to a fair trial under *Brady*. The district court, however, concluded the exhibit was immaterial to the result of Sylvara's trials and denied his motion. Sylvara appeals.

We review the district court's decision to deny Sylvara's motion for abuse of discretion. *See United States v. Holmes*, 137 F.4th 734, 741 (8th Cir. 2025); *United States v. Wadlington*, 233 F.3d 1067, 1074 (8th Cir. 2000). But we review legal questions, including "allegations of *Brady* violations[,] *de novo*," *Holmes*, 137 F.4th at 741, and "[a] district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996). This means the district court abused its discretion if its conclusion that the government did not violate Sylvara's rights under *Brady* was wrong, because this was its basis for denying his motion.

"[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. Put more plainly, "[t]o establish a claim under *Brady*, [Sylvara] must establish that the government (1) suppressed evidence; (2) that was favorable to him; and (3) material to the outcome of the trial." *United States v. Smart*, 60 F.4th 1084, 1095 (8th Cir. 2023). We address each of these elements in turn.

-4-

First, as Sylvara notes, when the government responded to his motion to dismiss his indictment or for a new trial, it "concede[d] the [exhibit] was suppressed." However, it now contends Sylvara could have gathered the same information contained in the exhibit from other evidence the government produced before trial. Because this argument was made for the first time on appeal, after the government conceded this issue below, we will not consider it. *See United States v. Rees*, 447 F.3d 1128, 1130 (8th Cir. 2006) ("Because [the appellant] not only failed to raise his . . . argument, but in fact expressly conceded [it] before the district court, we will not address it."). As a result, we find the government suppressed the exhibit.

Second, "[e]vidence is favorable if it is directly exculpatory or useful for impeachment purposes." *United States v. Corey*, 36 F.4th 819, 822 (8th Cir. 2022). The "burden of demonstrating that the evidence was of a favorable nature is . . . a very slight one," as the defendant only needs to show it may be "potentially useful." *Evans v. Janing*, 489 F.2d 470, 476 (8th Cir. 1973); *see also Banks v. Dretke*, 540 U.S. 668, 691 (2004) (holding *Brady*'s favorability element was satisfied because "the suppressed evidence" was "advantageous to Banks"). Sylvara argues the exhibit favored him because it "undermined the implication that [he] converted the SSI back payment" and "provided important context for the government's evidence about cash withdrawals . . . ." We agree.

The exhibit states the SSA determined Sylvara did not convert his father's SSI benefits. So at the very least, Sylvara could have used it to impeach the government witnesses' testimony implying he converted these funds and to account for roughly

$11,000 of the approximately $17,000 in cash they testified he withdrew between January 9, 2017, and March 28, 2017. Consequently, the exhibit favored Sylvara.[2]

Third, "the materiality standard . . . is met when 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Banks*, 540 U.S. at 698 (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)). In making this assessment, "[w]e must examine the trial record, evaluate the withheld evidence in the context of the entire record, and determine in light of that examination whether there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Turner v. United States*, 582 U.S. 313, 324–25 (2017) (cleaned up).

Sylvara argues the exhibit was material because it (1) showed he did not convert his father's SSI benefits; (2) undercut the government's narrative regarding the cash withdrawals; (3) supported his testimony that his father agreed to use the SSI and SSDI benefits to pay Sylvara for food, shelter, and care; and (4) discredited Krahn's testimony. We disagree.

Most importantly, while the exhibit would have helped Sylvara show that he did not convert his father's SSI benefits, it very clearly concluded Sylvara converted $42,369 of his father's SSDI benefits, the exact amount the government contended Sylvara converted in total. Put differently, the exhibit would have helped Sylvara clarify which benefits he converted, but it would not have reduced the total amount he converted from his father. Similarly, while the exhibit accounted for some of the cash Sylvara withdrew, the government's evidence showed he made the first

---

[2]The district court was skeptical regarding whether the exhibit favored Sylvara because it "succinctly lays out the SSA's calculation . . . for its determination that [Sylvara] converted $42,369 of his father's SSDI benefits." But this goes to whether the exhibit was material, not to whether it favored Sylvara. *See Strickler v. Greene*, 527 U.S. 263, 282 & n.21 (1999) ("We reject respondent's contention that these documents do not fall under *Brady* because they were inculpatory. Our cases make clear that *Brady*'s disclosure requirements extend to materials that, whatever their other characteristics, may be used to impeach a witness." (cleaned up)).

withdrawal on January 9, 2017, over a month before his father received SSI benefits on February 22, 2017, and he withdrew almost $6,000 more than the total amount his father received in SSI benefits by March 28, 2017. So some of the cash Sylvara withdrew must have come from his father's SSDI benefits, and the exhibit would not have explained this.

Additionally, assuming the exhibit would have supported Sylvara's testimony that his father agreed to use his SSI benefits to repay Sylvara for providing food and shelter while his applications were pending, it would have been cumulative of other evidence on this point. For instance, the government showed beneficiaries can agree to use their SSI benefits for this purpose and that Sylvara and his father had such an agreement. What's more, assuming for the sake of argument Sylvara could show the jury did not believe his father agreed to use his SSI benefits to repay Sylvara and the exhibit would have changed its mind, we see no reason to believe the jury would have then concluded Sylvara's father also agreed to use his monthly SSDI benefits to pay Sylvara for prospective care. Rather, the jury could have readily concluded one agreement existed and the other did not, especially since SSDI benefits cannot be used to pay for prospective care. Further still, even if Sylvara had proven his father agreed to use his SSDI benefits to pay Sylvara for care, this would not undermine the government's evidence showing Sylvara used his father's SSDI benefits to pay Sylvara's own car insurance premium, utility bills, student loans, and realtor fees.

Lastly, while we agree Sylvara could have used the exhibit to impeach Krahn, we do not believe there is any reasonable probability this would have caused the jury to reach a different result. During the trial, Sylvara effectively impeached Krahn's testimony that the SSA gave Sylvara "full credit" for all the expenses he claimed, regardless of whether they were documented, by pointing out the SSA only credited roughly $28,000 of the $62,000 in expenses Sylvara claimed to have incurred for his father. The jury found Sylvara guilty despite this, and he has not convinced us things would have turned out differently if he had used the exhibit to further undermine Krahn's testimony.

In sum, given all the testimony and evidence the government introduced, we cannot say there is a reasonable probability that the result of Sylvara's trial would have been different if the exhibit had been disclosed. *See Turner*, 582 U.S. at 324–25. As a result, Sylvara has not demonstrated the exhibit was material, and we affirm the district court's judgment.

_____